## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

**JANE DOE**,

   Plaintiff,

  v.

**JONATHAN BARAM and WARREN & BARAM MANAGEMENT LLC**,

   Defendants.

Case No. 1:20-cv-09522

**JURY TRIAL DEMANDED**

## <u>COMPLAINT</u>

This is a civil action for damages under the United States Federal sex trafficking statute, 18 U.S.C. §§ 1591, *et seq.* and other state laws, brought by Plaintiff Jane Doe, arising from Defendant Jonathan Baram's ("Baram") and Warren & Baram Management LLC's ("Warren & Baram") (collectively, "Defendants") sex trafficking of Jane Doe to Peter J. Nygard ("Nygard"). Baram and Warren & Baram, a New York limited liability company, were instrumental in knowingly aiding, abetting, facilitating, conspiring, and participating in the sex trafficking venture of Nygard, Nygard Inc., Nygard International Partnership ("Nygard International"), which have global headquarters near Times Square in New York City, and Nygard Holdings Limited's ("Nygard Holdings") (collectively, the "Nygard Companies").  Defendants lured, enticed, recruited, harbored, provided, solicited and transported Jane Doe, who at the time was less than eighteen-years-old, to Nygard's residence and caused and conspired for her to engage in commercial sex act(s) with Nygard, in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA").

1.      As detailed in *Jane Does Nos. 1-57 v. Nygard, et al.* and *Jane Doe, et al. v. Nygard, et al.*,[1] *John Does 1 and 2 v. Nygard, et al.*, No. 20-cv-06501 (ER) (August 16, 2020) (Ramos, J.), and *Jane Doe v. Suelyn Medeiros*, No. 20-cv-24357 (SDFL Oct. 22, 2020) (Martinez, J.), and a number of other related lawsuits, Nygard and the Nygard Companies perpetrated a decades-long, international sex trafficking venture that lured, enticed, recruited and coerced countless girls, women, and boys to be raped and/or sexually assaulted.

2.      Defendants Jonathan Baram and Warren & Baram Management LLC have conspired with Nygard and the Nygard Companies by knowingly and actively recruiting young women and underage girls for Nygard to engage in commercial sex acts with, as part of his sweeping international sex trafficking venture.

3.      Plaintiff Jane Doe is one such innocent, child victim of Defendants' active recruiting and luring of young women and underage girls so that Nygard could prey on them.

4.      Defendants lured, enticed, recruited and transported Jane Doe to Nygard's apartment where they knew that Nygard was waiting to rape her; and Baram waited outside while Nygard did so.

5.      Upon completion of the rape, Baram then transported Jane Doe back to his private apartment where he also sexually battered Jane Doe.

***Defendants Knowingly Trafficked Victims to Nygard in Exchange for Clients and Influence in the Female Modeling Industry.***

6.      Nygard is, in his own words, a world-renowned fashion designer.  By others, Nygard "has been accused of abusive labor practices, tax evasion, sexual harassment and rape."[2]

---

[1] *See Jane Does Nos. 1-57 v. Nygard, et al.*, No. 20-cv-01288 (ER), Doc. No. 51 (S.D.N.Y. June 10, 2020); *see also Jane Doe, et al. v. Nygard, et al.*, No. 1:20-CV-06501 (ER), Doc. No. 1 (S.D.N.Y. Aug. 16, 2020).

[2]      https://www.forbes.com/forbes/2010/1206/features-peter-nygard-sexual-harassment-answers-to-no-one.html#236f0e30bc9b.

Nygard is the founder, chairman, figurehead, chief executive, and icon of the Nygard Companies, which at the time relevant to this Complaint was a leader in the women's apparel industry.  Nygard has an estimated net worth of approximately $750-900 million through various business entities that he owns in the fashion industry.[3]

7.      In 2007, Defendants knowingly lured and enticed Jane Doe, a minor, to travel to New York City under the false pretense that they could make her a model and/or actress, when in reality, she was recruited for the sole purpose of trafficking her to Nygard.

8.      Defendants—operating a talent management agency for models and actresses— were one of many "recruiters" for Nygard that conspired with Nygard and the Nygard Companies to provide him with a steady pool of victims for him to rape and/or sexually assault.

9.      In exchange, Defendants received economic benefits and influence in the female modeling industry, including clients, from Nygard and the Nygard Companies.  For example, at least one of Defendants' main female model clients, Suelyn Medeiros ("Medeiros"),[4] is a long-time former "girlfriend" and sex-worker of Nygard.

10.     Nygard used Medeiros both as a sex worker for himself and as a "recruiter" to provide him with additional victims for him to rape and sexually assault.  In 2007, at the time Defendants trafficked Jane Doe to Nygard, Medeiros was on the Nygard Companies' official payroll for her ability to lure young and vulnerable women for Nygard to rape and sexually assault.

---

[3] https://www.youtube.com/watch?v=yH0ODUKH1qE; https://www.youtube.com/watch?v=L1x-Vrn-33M; https://www.youtube.com/watch?v=iK5hlWl5qLc

[4] *See* http://warrenandbaram.com/the-talent-4/ last accessed July 14, 2020.



Peter Nygard and Suelyn Medeiros Virgin Unites Midnight Magic Gala Direct Energy Building November 12, 2007

11.    Additionally, flight manifests show that Baram received access to Nygard's "models" by traveling with Nygard and his "models" on the Nygard Companies' corporate jet.[5]



JONATHAN BARAM WITH SUELYN & SHERYL IN THE BAHAMAS

---

[5] Melissa Cronin, *Predator King: Peter Nygard's Dark Life of Rape, Drugs, and Blackmail* (2020), at p. 373.



JONATHAN BARAM WITH SUELYN MEDEIROS AT CIPRINANIS

12.    Although Baram purports to run a talent agency for models and actresses, he is a

self-proclaimed "pimp."



HEBREW PIMP "THE CHOSEN PEOPLE"

5

***Defendants Knowingly Lured, Enticed, and Defrauded Jane Doe to Travel to New York from Canada to Be Raped by Nygard.***

13.     In 2007, Jane Doe was a seventeen-year-old Canadian resident who had dreams of becoming a famous model and actress.

14.     Baram lured, enticed, recruited, and solicited Jane Doe to travel from Canada to New York City, under the guise that Defendants would represent her for a modeling and acting career in the United States as her talent agency.

15.     Baram brought Jane Doe to his private apartment in New York City as the designated location for the first business meeting between the model and the agency.

16.     When she arrived, Baram told Jane Doe that he had a very important friend in the fashion business, Nygard.  Baram told Jane Doe that he could set up a "meeting" between Jane Doe and Nygard that would help further her career.

17.     Baram told Jane Doe that he needed to send Nygard nude pictures of her for an upcoming bikini photo shoot in the Bahamas.

18.     Baram then instructed Jane Doe to take off her clothes and took photographs of her, while defrauding her by telling her that these photographs were both necessary and for a legitimate purpose.

19.     Baram sent the nude photographs to Nygard and, once Nygard approved, told Jane Doe that she was "in luck" because Nygard wanted to "meet her."

20.     Baram then immediately transported Jane Doe to Nygard's penthouse apartment in New York City, knowing that Nygard intended to rape Jane Doe, a minor.

21.     When Jane Doe and Baram arrived at Nygard's apartment, employees of the Nygard Companies and Baram provided her with alcohol and encouraged her to drink, even though they knew she was underaged.

22.     After about an hour, Jane Doe was taken into a bedroom to "meet" with Nygard and discuss "modeling."

23.     Nygard falsely told Jane Doe that she would be a good fit for a modeling opportunity for the Nygard Companies in the Bahamas.

24.     Jane Doe lost consciousness shortly thereafter, due to the alcoholic drinks that Baram and others provided her, which were spiked with drugs.

25.     Jane Doe eventually awoke on her stomach with her dress pulled up over her waist and her underwear removed.

26.     When she awoke, Nygard was on top of her sodomizing her.

27.     Nygard continued to sodomize Jane Doe as she screamed for help and vomited.

28.     Nygard then raped Jane Doe vaginally.

29.     After Nygard raped and sodomized her, Jane Doe went into the bathroom and eventually returned to the other room where Baram was waiting.

30.     Jane Doe told Baram that she wanted to leave and Baram took her back to his apartment.

31.     Jane Doe did not feel well and attempted to sleep on Baram's sofa because she had nowhere else to go.

32.     Jane Doe awoke in the middle of the night to Baram groping her and Jane Doe begged Baram to stop.

33.     In the morning, Jane Doe immediately gathered her belongings and left as soon as she could.

34.     As she was leaving, Jane Doe saw another young female enter Baram's apartment.

***Defendants' Co-Conspirators are Headquartered in New York.***

35.    Defendants knowingly conspired with Nygard and the Nygard Companies to actively recruit, lure, entice, and solicit women to be raped by Nygard.

36.    Nygard is the former founder, chairman, figurehead, chief executive, and icon of the Nygard Companies.

37.    Nygard has a permanent residence in New York City.  Nygard's penthouse apartment, where Jane Doe was raped, is located on the sixth floor of the Nygard Companies' World Headquarters in New York City.  Nygard illegally converted the sixth floor into a private apartment with a jacuzzi and disco room, according to a citation Nygard received from the City of New York in 2013.  Below are photographs of Nygard's penthouse apartment in New York City:









38.     Nygard is the Nygard Companies, and the Nygard Companies are Nygard.  Indeed, Nygard proclaims in public filings that he and his businesses are "closely associated in the public eye."[6]

39.     The Nygard Companies' promotional materials and advertisements also make the companies synonymous with "one man," Nygard, who is featured individually on almost all promotional materials and advertisements.[7]  Nygard and his businesses are "closely identified in the public mind, similar to other fashion houses."[8]

40.     Nygard entirely controls each of the Nygard Companies.

41.     At Nygard's direction, the Nygard Companies commingle funds and do not observe corporate formalities.  Nygard commingles the Nygard Companies' funds, uses the Nygard Companies as his own personal bank account, and does not observe any corporate formalities.  For example, Nygard uses the corporate account to pay for: (a) hush money to victims of his abuse; (b) plastic surgery for his "girlfriends;" and (c) his extensive medical treatments, including stem cell transplants.

42.     Lawyers for the Canadian receiver, Richter, have recently accessed the Defendants' computer systems and stated:  "This company, the Nygard organization — and that's more than just the respondents — chose to carry on their business in such a way that they intermingle records, electronic files for — it looks to be as many as 30 companies and they've done that for years."

43.     Nygard Inc. and Nygard International have their global headquarters in Times Square, New York City.

---

[6] Complaint at ¶ 31, *Nygard, et al. v. Dipaolo, et al.*, No. 17-cv-60027 (S.D.N.Y. Jan. 5, 2017), at ¶¶ 1, 31.

[7] *See, e.g.*, video at https://corporate.nygard.com/.

[8] *See* Complaint at ¶ 31, *Nygard, et al. v. Dipaolo, et al.*, No. 17-cv-60027 (S.D. Fla. Jan. 5, 2017).





44.     Nygard, Nygard, Inc., and Nygard International have invoked the jurisdiction of the United States courts by filing lawsuits in the United States courts, including this District, as well as being "synonymous" with Nygard Inc. and using Nygard Inc. to participate in his conspiracy and/or criminal venture for both his own benefit and the benefit of the Nygard Companies.[9]

45.     Nygard owns the companies, Nygard NY Retail, LLC, Nygard Partners, LLC, and Orion Asset Management, Inc., each of which is a New York corporation.

## JURISDICTION AND VENUE

46.     This Court has federal question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff brings this action under the federal TVPRA statute.

47.     This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because all claims alleged herein arise out of the same series of transactions or occurrences and form part of the same case or controversy.

48.     This Court has personal jurisdiction over Defendants because Warren & Baram is a New York Limited Liability Company with its principal place of business in New York, at all time relevant to this Complaint, Baram had a permanent residence and was domiciled in New York, and Plaintiff's claims arise out of Defendants' tortious conduct in New York.

49.     This Court is "an appropriate district court of the United States" in accordance with 18 U.S.C. § 1595, as venue is proper in this District under 28 U.S.C. § 1391(b)(2), because the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

---

[9] *See, e.g. Nygard, et al. v. Bacon*, No. 1:19-cv-01559-LGS-KNF (S.D.N.Y. Feb. 19, 2019); *Nygard, et al. v. Dipaolo, et al.*, No. 17-cv-60027, 2017 WL 4303825 (S.D. Fla. Jan. 5, 2017); *Nygard International Partnership v. Feralio*, No. B266683, 2017 WL 4784925 (Cal. Ct. App. Oct. 24, 2017); *Nygard v. Jasper*, No. 8:15-cv-1939-T-33EAJ, 2016 WL 9526666 (M.D. Fla. Jan. 4, 2016); *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027 (Cal. Ct. App. 2008); *Nygard, Inc. v. Kustannusosakeyhtio Iltalehti*, No. B192639, 2007 WL 1775963 (Cal. Ct. App. June 21, 2007).

# PARTIES

### A.     Plaintiff Jane Doe

50.     Jane Doe is a Canadian citizen who resides in Canada.

51.     She is using a pseudonym because of the highly personal nature of this matter.

52.     Plaintiff is also at serious risk of retaliatory harm because Defendants' co-conspirators, Nygard and the Nygard Companies, have tremendous wealth and power and have used it to retaliate against others who have attempted to come forward, including by means of arson, property destruction, threats of physical violence, and threats of legal action.

53.     Plaintiff is also vulnerable because of Defendants' co-conspirators' wealth and influence in Canada and the United States, and the corruption of law enforcement by the co-conspirators through bribery and political influence.[10]

54.     Plaintiff's safety, right to privacy, and security outweigh the public interest in her identification.

55.     Plaintiff's legitimate concerns outweigh any prejudice to Defendants by allowing Plaintiff Jane Doe to proceed anonymously.

### B.     Defendants

56.     Defendant Jonathan Baram is currently a resident of Miami, Florida. At the time relevant to this Complaint, Baram was a resident of New York, New York and had an apartment there.  He is the president of Warren & Baram Management LLC.

57.     Defendant Warren & Baram Management LLC is a talent management group that specializes in the representation of Latina and African American female talent.  Warren & Baram's

---

[10] *See, e.g.*, https://www.youtube.com/watch?v=Pw1xUXQNelg;
http://www.tribune242.com/news/2018/feb/14/nygard-outright-bribery-plp/;
http://www.tribune242.com/news/2014/jun/25/nygard-gave-money-plp-then-asked-help-over-land-is/;
http://www.tribune242.com/news/2017/may/05/fresh-questions-over-las-vegas-trip-pm-gibson-and-/

core business is booking actor/models for television, film, and print media. Warren & Baram is a New York limited liability company and maintains a business address located 2140 Pacific Boulevard, Atlantic Beach, New York, 11509.

## THE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT

58.     The TVPRA outlaws sex trafficking activities that affect interstate or foreign commerce or take place within the territorial jurisdiction of the United States.  It is to be construed broadly because it serves a remedial purpose and uses intentionally broad language.

59.     The TVPRA makes it unlawful for:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2)  benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).[11]

60.     As alleged herein, Defendants knowingly used interstate and foreign commerce to violate the TVPRA by enticing, luring, recruiting, harboring, providing, soliciting and/or transporting Jane Doe to engage in commercial sex acts in the State of New York.

---

[11] 18 U.S.C. § 1591(a).

61.     In addition to violating the TVPRA, as alleged herein, Defendant conspired to violate and/or violated the laws of the State of New York.

62.     Due to extraordinary circumstances and Defendants' co-conspirator's conduct, which prevented, to the extent applicable, Plaintiff from bringing their claims, the applicable statute of limitations is equitably tolled for Plaintiff's TVPRA claims.

63.     The general rule is that statutes of limitations are subject to equitable tolling.  *See United States v. Locke*, 471 U.S. 84, 94 n.10 (1985) ("Statutory filing deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling."); *Young v. United States*, 535 U.S. 43, 49 (2002) ("It is hornbook law that limitations periods are customarily subject to equitable tolling unless tolling would be inconsistent with the text of the relevant statute.") (quotation marks and citations omitted).

64.     Plaintiff, to the extent applicable here, pursued her rights diligently and was impeded because of a combination of force, threats of force, shame, embarrassment, fear, political and law enforcement corruption, weak laws that are rarely enforced to protect the victim, and bribery.  As a result, to the extent necessary, all applicable statutes of limitations should be equitably tolled.

65.     Defendants' co-conspirator, Nygard, is notorious for using his wealth, political power, and influence in Canada, the United States, and the Bahamas to intimidate his victims and prevent them from coming forward.[12]

66.     Nygard also uses violence, threats of violence, bribery, and corruption to intimidate and silence his victims and those that he believes have "betrayed" him.  Nygard has silenced his victims by, among other means, having their tires slashed, committing arson, hiring thugs to

---

[12] See *Jane Does Nos. 1-57 v. Nygard, et al.* Complaint, filed February 2020.

intimidate his victims, having his victims followed, engaging in murder-for-hire plots, and otherwise threatening his victims with death.

67.     Nygard also routinely threatens to use his wealth to sue and destroy the reputation of anyone who comes forward to report his crimes.

68.     Due to Defendants' conspiracy with Nygard and their close association with him as a recruiter, Jane Doe legitimately feared for her life as well as other forms of retaliation if she pursued claims against Defendants for trafficking her to Nygard.

69.     It wasn't until Nygard was sued in a class action lawsuit,[13] as well as investigated by the FBI,[14] that Jane Doe felt she could pursue this claim without risk of harm or death.

70.     To the extent that Jane Doe was unable to pursue her claims, she was legitimately and justifiably afraid that Defendant and/or Nygard would harm and/or retaliate against her if she pursued any claim against Defendants.

71.     Nygard uses his financial resources, political power, influence, and threats of force to intimidate his victims—including Plaintiff—and prevent them from coming forward.

72.     In fact, just recently, Nygard's attorneys bribed high-level Bahamian police to determine the identities of victims who were reporting the rapes to officials.  There is legitimate concern that Nygard has attempted or will attempt to do the same in the United States and Canada.

73.     Further, even after his victims leave his control, Nygard often continues to attempt to contact them, in an intimidating manner, intending to instill fear in his victims and remind them of his power and ability to hurt them.

---

[13] *Id.*

[14] https://www.nytimes.com/2020/02/25/us/peter-nygard-international-fbi-raid.html.

74.     Due to his power and influence in the Bahamas and worldwide, Nygard's victims reasonably believe that he can have them killed if they pursue their claims.

75.     It is widely believed that Nygard pays thugs and/or the Bahamian police to harass and threaten his victims by slashing their tires, committing arson, threatening to arrest them, and having them followed.

76.     Nygard's intimidation tactics are not limited to the Bahamas.

77.     Nygard is also believed to have tremendous influence with the Winnipeg police as well as City officials.

78.     Nygard also requires many of his victims and witnesses to his crimes to sign non-disclosure agreements.  Nygard regularly uses his companies' wealth to sue and/or threaten to sue his victims and/or witnesses if they come forward to report his crimes.

79.     Nygard threatens to humiliate and/or destroy his victims' reputations if they come forward to report his crimes.

80.     Nygard threatens to use his companies' wealth and influence to destroy his victims' careers in the modeling industry if they come forward to report his crimes.

81.     Nygard's and Defendants' illegal conduct also constitutes a recurring pattern and practice of rape, sexual assault, and sex trafficking.

82.     His rape, sexual assault, and sex trafficking have been occurring continuously, consistently, and systematically since, at least, 1977 in violation of the TVPRA and various other state and foreign laws.

83.     Under the continuing violation doctrine, the statute of limitations is tolled for all victims who have been subjected to his recurring, uniform pattern and practice of sex trafficking, which includes Plaintiff.  Additionally, Plaintiff's claims against Defendants are tolled because

Defendants engaged in a continuing conspiracy to commit rape, sexually assault, sex trafficking, and subsequently cover up their crimes.

84.    Unnamed third-party recruiters and facilitators, and upper-level executives with the Nygard Companies also conspired with Nygard to conceal his crimes for the benefit of all Defendants.

85.    Due to Defendants' efforts in keeping their conspiracy secret, their conspiracy was only discovered upon the filing of *Jane Does Nos. 1-57 v. Nygard, et al.*  Therefore, the statute of limitations for Plaintiff's conspiracy claims is tolled under the discovery rule.

86.    Additionally, Plaintiff's claims under New York law are revived pursuant to the New York Child Victims Act, CPLR § 214-g because she was a minor at the time of her rape.

## CLAIMS ALLEGED

## COUNT I

### VIOLATION OF THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§ 1591(a)

87.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-86, as if fully set forth in this Count.

88.    Defendants knowingly used the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. § 1591(a)(1), occurring inside the territorial jurisdiction of the United States.

89.    Defendants' conduct was in or affecting interstate or foreign commerce for purposes of the TVPRA.

90.    Defendants knowingly recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized, and/or solicited Plaintiff for the purpose of causing her to engage in commercial sex acts, pursuant to 18 U.S.C. § 1591(a).

91.     Plaintiff was under the age of eighteen at the time this occurred.

92.     Defendants and their co-conspirators provided Jane Doe $500 in U.S. currency after Nygard raped her.

93.     Defendants' conduct has caused Plaintiff serious and permanent harm, including, without limitation, physical, psychological, financial, and reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity, in order to avoid incurring that harm.

## COUNT II

### PARTICIPATING IN A VENTURE IN VIOLATION OF
### THE TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§ 1591(a)

94.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-86, as if fully set forth in this Count.

95.     Defendants participated in a venture with Nygard and the Nygard Companies, in violation of 18 U.S.C. § 1591(a)(2).

96.     Defendants knowingly benefited from, and received value for, their participation in the venture, in which Defendants and Nygard would lure, entice, and transport Plaintiff, to engage in commercial sex acts.

97.     Plaintiff was under the age of eighteen at the time this occurred.

98.     Defendants knew, or was in reckless disregard of the fact, that it was Nygard's pattern and practice to use the channels and instrumentalities of interstate and foreign commerce, as well as the Nygard Companies' resources to entice, recruit or cause young and underage individuals to engage in commercial sex acts, and offering something of value in exchange for the sexual act.

99.     Defendants had actual knowledge that they were facilitating and participating in Nygard's use of company resources to recruit, entice, harbor, transport, provide, obtain, maintain, patronize, coerce, and/or solicit Plaintiff and others, into commercial sex acts.

100.    Despite such knowledge, Defendants facilitated and participated in Nygard's violations of 18 U.S.C. § 1591, where Defendants knew, or was in reckless disregard of the facts that, Nygard would lure, entice, harbor, transport, provide, obtain, maintain, patronize, coerce, and/or solicit Plaintiff to engage in commercial sex acts.

101.    Defendants also provided or promised Plaintiff items of value in exchange for engaging in the sexual acts with Plaintiff, including a lucrative modeling and/or acting career.

102.    In exchange for facilitating and covering up Nygard's scheme, Defendants received significant financial and business benefits, including clients and influence in the female modeling industry.

103.    Defendants' conduct has caused Plaintiff serious harm including, without limitation, physical, psychological, financial, and reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity, in order to avoid incurring that harm.

## COUNT III

### CONSPIRACY TO COMMIT VIOLATION OF THE
### TRAFFICKING VICTIMS PROTECTION ACT, 18 U.S.C. §§ 1594

104.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-86, as if fully set forth in this Count.

105.    Defendants conspired, by agreement or understanding, to further Nygard's unlawful plan and/or purpose to commit illegal commercial sex acts with Plaintiff.

106.    Plaintiff was under the age of eighteen at the time this occurred.

107.    Defendants committed overt acts in furtherance of the agreement or understanding by playing an active role in luring, enticing, and transporting Plaintiff to engage in commercial sex acts and by arranging and paying for Plaintiff to be transported to Nygard.

108.    Defendants provided or promised Plaintiff items of value in exchange for engaging in the sexual acts with Nygard, including but not limited to, a lucrative modeling and/or acting career.

109.    Defendants' participation in the furtherance of Nygard's illegal sex trafficking plan and/or purpose was intentional and/or willful and, therefore, Defendants intentionally and/or willfully caused Nygard's facilitation of the sex acts with Plaintiff in their affirmative acts supporting Nygard.

110.    Defendants knew that their acts and conduct supporting and facilitating Nygard would lead to unlawful commercial sex acts facilitated by Nygard involving Plaintiff.

111.    Defendants conspired with Nygard through their affirmative acts and provided substantial support to Nygard causing commercial sex acts upon Plaintiff.

112.    Defendants' conduct has caused Plaintiff serious harm, including, without limitation, physical, psychological, financial, and reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

## COUNT IV

**FORCIBLE TOUCHING AND ATTEMPTED RAPE IN VIOLATION OF NEW YORK LAW, CPLR § 214-G**

113.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-86, as if fully set forth in this Count.

114.    Baram knowingly forcibly touched the sexual parts of Plaintiff without her consent and for the sexual gratification of Baram.

115.    Plaintiff was under the age of eighteen at the time this occurred.

116.    Defendants transported Plaintiff back to Baram's apartment after she was trafficked and raped by Nygard.

117.    Plaintiff awoke in the middle of the night to Baram groping her and forcibly touching her sexual parts.

118.    Defendants' conduct has caused Plaintiff serious and permanent harm and/or damage, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

## COUNT V

**AIDING AND ABETTING SEXUAL BATTERY IN VIOLATION OF NEW YORK LAW**

119.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-86, as if fully set forth in this Count.

120.    Defendants knowingly aided and abetted, facilitated, and enabled the sexual battery of Plaintiff in violation of New York law.

121.    Defendants originated the scheme that began in New York when Plaintiff was transported from Canada to New York with the intention of her being sexually battered by Nygard.

122.    Defendants were aware of their role as part of an overall illegal or tortious activity at the time they provided assistance to Nygard because they knew that Nygard intended to sexually batter Jane Doe.

123.    Defendants knowingly gave substantial assistance or encouragement to Nygard in accomplishing the sexual battery of Jane Doe.

124.    Defendants knowingly facilitated and aided and abetted Nygard's scheme by luring, enticing, defrauding, and transporting Jane Doe to Nygard.

125.    This affirmative conduct of Defendants was committed knowing, or in reckless disregard of the facts that, Nygard would use Defendants to cause sexual battery against Plaintiff.

126.    Plaintiff has been damaged as a direct result of the Defendants' conduct. Defendants' conduct has caused Plaintiff serious and permanent harm and/or damage, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

## COUNT VI

### CONSPIRACY TO COMMIT SEXUAL BATTERY
### IN VIOLATION OF NEW YORK LAW

127.    Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1-86, as if fully set forth in this Count.

128.    Defendants participated in a conspiracy to cause the sexual battery of Plaintiff.

129.    Plaintiff was sexually battered by Nygard when he sodomized and raped her.

130.    Defendants knowingly agreed with Nygard that they would lure, entice, defraud, and transport Plaintiff to Nygard so that he could sexually batter Plaintiff.

131.    Defendants committed numerous overt acts in furtherance of their agreement, including, without limitation, luring, enticing, and defrauding Plaintiff to travel to New York, taking nude photographs of Plaintiff, a minor, and sending them to Nygard, transporting Plaintiff

to and from Nygard, and encouraging Plaintiff to drink and/or providing Plaintiff with alcohol that was spiked with drugs.

132.    In exchange for conspiring to facilitate and cover-up Nygard's sexual misconduct, Defendants received significant financial and business benefits, including clients, access to models, and influence in the modeling industry.

133.    Plaintiff was damaged as a direct result of Defendants' agreement and overt acts in furtherance of the agreement. Defendants' conduct has caused Plaintiff serious and permanent harm and/or damage, including, without limitation, physical, psychological, emotional, financial, and reputational harm.

## REQUEST FOR RELIEF

Plaintiff respectfully requests that the Court enter judgment in her favor, and against Defendants, as follows:

a.    That the Court grant permanent injunctive relief to prohibit Defendants from continuing to engage in the unlawful acts and practices described herein;

b.    That the Court award Plaintiff compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

c.    That the Court award punitive or exemplary damages in an amount to be determined at trial;

d.    That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

e.    That the Court award pre- and post-judgment interest at the maximum legal rate; and

f.    That the Court grant all such other relief as it deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.


Dated:  November 12, 2020

By:     */s/ Greg G. Gutzler*                          
Greg G. Gutzler
**DiCELLO LEVITT GUTZLER LLC**
444 Madison Avenue, Fourth Floor
New York, New York  10022
Tel.:  646-933-1000
ggutzler@dicellolevitt.com

Adam J. Levitt
Amy E. Keller (*pro hac vice*)
**DiCELLO LEVITT GUTZLER LLC**
Ten North Dearborn Street, SixthFloor
Chicago, Illinois  60602
Tel.:  312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com

Mark A. DiCello
Robert F. DiCello (*pro hac vice*)
Justin J. Hawal (*pro hac vice*)
**DiCELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio  44060
Tel.:  440-953-8888
mad@dicellolevitt.com
rfdicello@dicellolevitt.com
jhawal@dicellolevitt.com

Lisa D. Haba (*pro hac vice*)
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Drive, Suite 207
Longwood, Florida  32779
Tel.:  844-422-2529
lisahaba@habalaw.com

***Counsel for Plaintiff***