# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>   Plaintiff,<br><br> v.<br><br>JONATHAN BARAM and WARREN & BARAM MANAGEMENT LLC,<br><br>   Defendants. | CASE NO.:<br><br>**PLAINTIFF'S MOTION FOR PROTECTIVE ORDER AND LEAVE TO PROCEED ANONYMOUSLY WITH MEMORANDUM IN SUPPORT** |

   Plaintiff Jane Doe ("Plaintiff"), through her undersigned counsel, respectfully moves this Court to allow Plaintiff to proceed in this matter anonymously and for the granting of a protective order, pursuant to Federal Rule of Civil Procedure 26(c), to ensure that Defendants keep Plaintiff's identity confidential throughout the pendency of this lawsuit and thereafter. The arguments in support of this motion are set forth in the accompanying Memorandum in Support incorporated herein by reference.

Dated: November 12, 2020

# MEMORANDUM IN SUPPORT

## I. SUMMARY OF THE FACTS

Plaintiff Jane Doe is a survivor of sex trafficking and is bringing an action for damages against Defendants Jonathan Baram ("Baram") and Warren & Baram Management LLC ("Baram Management") (collectively, "Defendants"), under 18 U.S.C. §§ 1591, *et seq.*, as enacted by the federal Trafficking Victims Protection Reauthorization Act ("TVPRA"). Plaintiff seeks leave to proceed anonymously and a protective order because the disclosure of her identity to the public will cause the victim harm that outweighs the presumption of open judicial proceedings.

The alleged acts detailed in Plaintiff's Complaint are part of a global conspiracy between Baram, Baram Management, Peter J. Nygard ("Nygard"), Nygard Inc., Nygard International Partnership, Nygard Holdings Limited (collectively, the "Nygard Companies"), and a host of recruiters and facilitators, including the Nygard Companies' executives, who, at all relevant times, worked at or were employed at Nygard or Nygard Company properties, located in New York, California, Canada, and the Bahamas. Baram and Baram Management knowingly aided, abetted, facilitated, conspired, and participated in Nygard and the Nygard Companies' trafficking of young women and children, including Jane Doe, in violation of the TVPRA and other state laws.

Plaintiff did not come forward for many years due to a legitimate fear of retaliation and public exposure of her identity. *See* Complaint, Dkt. No. 1 at ¶¶ 54, 64-80. Defendants' co-conspirator, Nygard, is notorious for using his wealth, political power, and influence in Canada, the United States, and the Bahamas to intimidate his victims and prevent them from coming forward.[1] *Id.* Nygard is known to attack his victims in the media, threaten legal action, and for using violence, bribery, corruption, and threats to intimidate and silence his victims. *Id.* Jane Doe

---

[1] *See* Second Amended Complaint, *Jane Does Nos. 1-57 v. Nygard, et al.,* 2020-CV-01288, Dkt. No. 51 at ¶¶ 6, 26, 33, 172-230, 239-43, 278, 316-18, 1504-13(S.D.N.Y. June 10, 2020) ("Nygard lawsuit").

knew that Defendants' status with Nygard would cause Nygard to retaliate against her if she pursued her claims against Defendants. *Id.*

Plaintiff respectfully requests leave to proceed as "Jane Doe." She does not, however, object to providing her true, full name to Defendants at the commencement of discovery, pursuant to a protective order barring further dissemination of that information to any third parties, including Nygard and the Nygard Companies, and requiring all documents containing her true name to be filed under seal. Accordingly, granting Plaintiff's motion will not prejudice Defendants. Ultimately, Plaintiff's substantial privacy interests regarding this deeply personal and degrading sexual violation outweigh the public's interest in knowing her identity, as there is a greater public interest in protecting the interests of survivors of sexual abuse and sex trafficking, and to ensure that other similarly situated victims will not be deterred from reporting Defendants and their co-conspirators' crimes and seeking redress.

## II. ARGUMENT

There is a public interest in allowing society to scrutinize government functions, including open access to attend and observe both criminal and civil proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 599-600 (1980). "The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Doe v. Stegall,* 653 F.2d 180 (5th Cir. 1981). Party anonymity does not inhibit the public interest to an open trial in the way that closure of a courtroom does; rather, the public can still attend and observe a trial while the plaintiffs proceed under pseudonyms, thus preserving the constitutional interest in ensuring that "[w]hat transpires in the courtroom is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947).

Although Fed. R. Civ. P. 10(a) requires the title of the complaint to name all the parties,

courts have "approved of litigation under a pseudonym in certain circumstances," in order to protect the plaintiffs appearing in federal court. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008). When deciding whether a plaintiff may proceed under a pseudonym, the Second Circuit holds that a balancing test must be used that weighs the plaintiffs' need for anonymity against the countervailing public interests of disclosure and any prejudice to the defendant. *Id.* at 189.

The Second Circuit has set forth a list of ten (10) non-exhaustive factors that courts may consider in determining whether to permit a plaintiff to proceed pseudonymously:

> (1) Whether the litigation involves matters that are highly sensitive and of a personal nature;
>
> (2) Whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;
>
> (3) Whether identification presents other harms and the likely severity of those harms;
>
> (4) Whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of plaintiff's age;
>
> (5) Whether the suit is challenging the actions of the government or that of private parties;
>
> (6) Whether the defendants are prejudiced by allowing the plaintiff to press her claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated;
>
> (7) Whether the plaintiff's identity has thus far been kept confidential;
>
> (8) Whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose her identity;
>
> (9) Whether, due to the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identity; and
>
> (10) Whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff,* 537 F.3d. at 190. Courts are "not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Id*. at 191, n. 4.

In this case, nearly all of the relevant factors strongly weigh in favor of Plaintiff's motion to file this case using a pseudonym. Accordingly, Plaintiff's motion should be granted and she should be permitted to proceed in this matter anonymously.

**A. Factor 1: Disclosure of Plaintiff's identity would reveal information that is of a highly sensitive and personal nature.**

Plaintiff has a substantial privacy right in guarding the sensitive and highly personal information she must disclose in this sex trafficking litigation. Evaluating "the issue of pseudonymity requires weighing the scales between the public's interest and the rights to privacy advanced by the movant … [and] privacy interests are recognized in particular circumstances to be in the public interest." *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998).

In evaluating what information constitutes that of a highly sensitive and protected nature, it is well established that victims of rape, human trafficking, and sexual battery have a strong interest in protecting their identities, so that other victims will not be deterred from reporting such crimes. *See Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869, 872 (7th Cir. 1997) (a rape survivor's right to privacy overcomes the right for the public interest to know her identity); *Doe v. Cabrera*, 307 F.R.D. 1, 6 (D.D.C. 2014) (holding the sensitive and highly personal nature of the case, the risk of psychological harm to the plaintiff if the plaintiff's name were made public, and the minimal, if any, unfairness that the plaintiff's anonymity would cause the defendant weighed in favor of allowing plaintiff to proceed anonymously); *Fla. Abolitionist, Inc. v. Backpage.com LLC,* No. 17 Civ. 218, Doc. 46 at 2-4 (M.D. Fla. 2017) (multiple sex trafficking survivors' right to privacy, especially when some were minors, overcomes the right for the public

interest to know their identities); *Jane Doe v. Uber Technologies, Inc*., 17-CV-00950-WHO, Doc. No. 27 (N.D. Cal. Oct. 15, 2015) (the right for privacy for sexual and physical assault survivors, as well as human trafficking survivors, overcomes the right for the public interest to know their identities); *Doe v. Penzato,* No. CV10-5154 MEJ (N.D. Cal. 2011) (holding that the highly personal and sensitive nature of being a human trafficking and sexual battery survivor allowed the plaintiff to proceed anonymously); *Doe v. Epic Games, Inc.,* ---F. Supp.3d ---, 19 (N.D. Cal. 2020) (cases involving sexual abuse or human trafficking appropriately favor allowing a plaintiff to proceed using a pseudonym, as opposed to a video-game habit); *Doe v. Cabrera*, 307 F.R.D. at 5 (D.D.C. 2014) (courts generally allow a plaintiff to litigate under a pseudonym in cases containing allegations of sexual assault because they concern highly sensitive and personal subjects); *E.E.O.C. v. Spoa, LLC,* No. CCB-13-1615, 3-4 (D. Md. 2013) (finding that sexual assault is a highly sensitive and personal matter); *Roe v. St. Louis Univ.,* No. 08-CV-1474-JCH, 5 (E.D. Mo. 2009) (allowing use of pseudonym because rape is a personal matter of the utmost intimacy).

One of the main deterrents to reporting sex crimes and crimes of human trafficking is the survivor's fear that his or her identity will become known; and, as such, the survivor's individual privacy right overcomes the public interest of knowing the survivor's identity. Society is better served by incentivizing victims of these horrific crimes to come forward, instead of enabling the perpetrator to remain unaccountable and continue to commit sex crimes. *See Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d. at 872.

Defendants conspired with Nygard and the Nygard Companies by knowingly and actively recruiting Plaintiff, a child, to be trafficked to Nygard, under the false pretense of potential modeling jobs via Baram Management. *See* Complaint, Dkt. No. 1 at ¶¶ 13-16. Baram falsely

promised a potential modeling opportunity with Nygard. *Id.* He insisted on taking nude photos of Plaintiff and deceived Plaintiff by stating these photos were for a legitimate purpose. *Id.* at ¶ 17. Instead, Baram sent the photos to Nygard, obtained approval from Nygard, and transported Plaintiff to Nygard's location under the false pretense that she would be considered for a potential modeling opportunity. *Id.* at *Id.* at ¶¶ 18-20. At the location, Plaintiff was drugged and Nygard raped and sodomized her, first while unconscious, and then continued assaulting her, against her will, after she regained consciousness. *Id.* at *Id.* at ¶¶ 21-29. While Baram waited in an adjacent room, Plaintiff's screams for help went unanswered. *Id.* Baram waited until Nygard was finished raping Plaintiff, and then transported her back to his own apartment in New York. *Id.* at *Id.* at ¶¶ 30-34. In the middle of the night, Plaintiff awoke to Baram groping her. *Id.* He finally stopped after Plaintiff pleaded with him to let her sleep. *Id.* Disclosure of Plaintiff's identity will reveal these highly sensitive and personal events, which weighs in favor of allowing Plaintiff to proceed under anonymously.

> **B. Factor 2: Disclosing Plaintiff's identity would subject her to a risk of retaliation, and physical or mental harm by Defendants and Their Co-conspirators.**

If identification of Plaintiff poses a reasonable risk of retaliatory physical or mental harm to Plaintiff, then this factor should be weighed in favor of proceeding pseudonymously. *Sealed Plaintiff*, 537 F.3d at 190. Courts must determine if the moving party's fear is substantial and reasonable. *Plaintiffs #1-21*, 138 F. Supp. at 272; *see also Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058, 1070 (9th Cir. 2000). When considering the reasonableness of the fear of retaliation, the Court in *Plaintiffs #1-21* properly relied on the allegations in the complaint regarding the defendants' conduct as the foundation for such a determination. *Id.*

Plaintiff did not come forward for many years due to a legitimate fear of retaliation and public exposure of her identity. *See* Complaint, Dkt. No. 1 at ¶¶ 51-55, 62-80. Defendants' co-

conspirator, Nygard, is notorious for using his wealth, political power, and influence in Canada, the United States, and the Bahamas to intimidate his victims and prevent them from coming forward.[2] *Id.* Nygard is known both amongst his peers, as well as by Jane Doe personally, to attack his victims in the media, threaten legal action, and for using violence, bribery, corruption, and threats to intimidate and silence his victims. *Id.* Plaintiff knew that Defendants' status with Nygard would cause Nygard to retaliate against her if she pursued her claims against Defendants. *Id.* It was not until the class action lawsuit against Nygard and subsequent lawsuits against his co-conspirators came forth that Plaintiff felt that she could pursue her claims, but is still fearful of retaliation. *Id.* Accordingly, this factor weighs in favor of permitting Plaintiff to proceed anonymously.

### C. Factor 3: Identification of Plaintiff would likely cause additional severe harm to Plaintiff.

If Plaintiff is publicly identified, it will further exacerbate the ongoing psychological harm and trauma Plaintiff already suffers. Human trafficking and sexual abuse strips its victims of their dignity and value as a person; it erases the victim's choice and makes the victim doubt their own self-worth.[3] There is a psychological vulnerability and harm to even the strongest of sex trafficking survivors that is easily exacerbated. Survivors of sex trafficking and sexual abuse who have been able to thrive after their ordeal and speak openly about the offenses they were subjected to, explain that it takes a great deal of incredibly difficult work to reach that point.[4] Even at the most advanced stages of healing, many survivors are not willing to go public with their stories.

---

[2] *See* Second Amended Complaint, *Jane Does Nos. 1-57 v. Nygard, et al.,* 2020-CV-01288, Dkt. No. 51 at ¶¶ 6, 26, 33, 172-230, 239-43, 278, 316-18, 1504-13(S.D.N.Y. June 10, 2020) ("Nygard lawsuit").
[3] https://www.unodc.org/unodc/en/frontpage/breaking-the-silence-on-human-trafficking.html.

[4] Ruth Rondon, *Understanding the 4 Stages of Recovering from Sex Trafficking*, Human Trafficking eLearning, (2017) 1- 7, 5 (This guide is written by a well-published survivor of sex trafficking and is attached hereto as "Exhibit 1.").

Survivors struggle with "re-living the traumas over again through flashbacks, overwhelming intrusive and negative thoughts, feeling consumed by emotions of shame and guilt, thinking that they are living in hiding and unable to let themselves be truly seen, and experiencing fleeting feelings of dignity and respect."[5] Plaintiff does not speak openly about her past victimization, and instead, she tries to regain the normal life they were deprived of due to Defendants' actions. Thrusting plaintiffs, who is not ready to be public with their stories, into the public spotlight will cause severe psychological harm and can be catastrophic to a survivor's recovery.

Additionally, victims of sex trafficking and sexual abuse are also uniquely vulnerable in this current age of technology, where every thought, whether accurate or inaccurate, gets published online in social media. *See Cabrera*, 307 F.R.D. at *7 ("Having the plaintiff's name in the public domain, especially in the Internet age, could subject the plaintiff to future unnecessary interrogation, criticism, or psychological trauma, as a result of bringing this case."). Traffickers and sexual predators, like Nygard and Defendants, are experts in psychological manipulation; they use degrading and dehumanizing tactics to keep their victims enslaved and in fear. To certain segments of society, the victims are sometimes viewed as "at fault" for what happened to them. Therefore, to subject Plaintiff to such unsolicited feedback online through public disclosure of her identity—when what she seeks from this litigation is to come a step closer to being made whole again—will perpetuate the same harm that Plaintiff has already suffered. Identification of Plaintiff will likely cause additional severe mental and psychological harm, which weighs in favor of allowing Plaintiff to proceed anonymously.

---

[5] *Id* at 3.

**D. Factor 4: As a survivor of sex trafficking, Plaintiff is particularly vulnerable to the possible harm of disclosure, especially given that she was a minor during the time that she was trafficked by Defendants.**

Plaintiff is particularly vulnerable to the harms inherent in disclosure of her identity, especially since she was a child at the time she was sex trafficked by Defendant to Nygard. In *Doe v. Stegall*, the Fifth Circuit considered several factors when deciding if the plaintiffs should be permitted to proceed anonymously in an establishment clause matter involving religion in schools. The lawsuit was brought on behalf of two children in middle school, and the plaintiffs sought to proceed under pseudonyms to protect their names from the general public. The plaintiffs agreed to allow the defendants to know their names, so long as a protective order prevented the defendants from disclosing the names to anyone beyond their legal representatives. The court determined that a special emphasis must be given to the "special status and vulnerability" of child plaintiffs, and ultimately determined that the plaintiffs should have been permitted to proceed under pseudonyms. *Stegall*, 653 F.2d at 186.

Plaintiff was seventeen (17) years old at the time she was sex trafficked by Defendants and ultimately raped by Nygard. Plaintiff is particularly vulnerable to psychological trauma due to her young age at the time of the incident. Adults are supposed to protect children. Instead, Defendants used her young age, dreams of becoming a model, and inexperience with sexuality and life to manipulate and coerce her into becoming a victim of rape and human trafficking. Plaintiff holds a tremendous amount of shame and psychological pain over acts that were inflicted upon her when she was young and vulnerable, which weighs in favor of allowing Plaintiff to proceed anonymously.

### E. Factor 5: Plaintiff is challenging the actions of wealthy and influential members of the entertainment industry.

Some courts recognize that when a minor plaintiff challenges the statutory or regulatory validity of government activity, the might and size of the government can be daunting. *Doe v. Frank*, 951 F.2d 320, 323-24 (11th Cir. 1992), *citing Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979). Plaintiff concedes that she is not challenging any member or branch of the government; rather, she has filed suit against private parties. This factor alone, however, does not support denying Plaintiff's request to proceed anonymously.

### F. Factor 6: Defendants will not be prejudiced by Plaintiff proceeding anonymously because Defendants will know the names of Plaintiff, subject to a protective order.

As a general rule, courts have determined that while a plaintiff's identity may be protected from the general public, it will prejudice the defendant to not know whom to investigate, and will frustrate the defendant's ability to participate meaningfully in discovery without knowing the identity of the accuser(s). *Plaintiffs #1-21 v. County of Suffolk*, 138 F. Supp. 3d 264, 276 (E.D.N.Y. 2015); *Doe I v. Four Bros. Pizza,* No. 13 CV 1505(VB), 2013 WL 6083414, at *10 (S.D.N.Y. Nov. 19, 2013). On the other hand, if the public is prevented from knowing the identity of a plaintiff, but the defendant is made aware of the plaintiff's identity, the defendant is not prevented from "conducting a full range of discovery in building a defense for trial." *Plaintiff B v. Francis,* 631 F.3d 1310, 1318-19 (11th Cir. 2011). It is well established that when balancing the different interests involved in cases such as these, "courts have permitted parties to enter into protective orders that permit the limited disclosure of a plaintiff's identity for discovery purposes on the condition that the defendants do not disclose it to the general public." *Plaintiffs #1-21*, 138 F. Supp. 3d at 277; *Doe v. U.S.*, No. 16-cv-7256 (JGK), 2017 WL 2389701, at *1 (S.D.N.Y. June 1,

2017); *Advanced Textile Corp.,* 214 F.3d at 1069.

Anonymity in this case would be limited to the pseudonym that Plaintiff uses, not to who the Plaintiff is in every other respect. *See James v. Jacobson*, 6 F.3d 233, 243 (4th Cir. 1993). As previously mentioned, Plaintiff is willing to provide her full name to Defendants, subject to a protective order that prohibits disclosure to any non-parties, at the appropriate stage of this litigation. Plaintiff also seeks redaction of her personally identifying information from the public docket and assurances that Defendants will not use or publish Plaintiff's identity pursuant to the protective order. Furthermore, there is no alternative mechanisms for protecting the identity of Plaintiff. With this concession in place, Defendants will not be prejudiced if Plaintiff's motion is granted and, therefore, this factor weighs in favor of allowing Plaintiff to proceed under a pseudonym.

**G. Factor 7: Plaintiff has kept her identity confidential to date.**

Whether Plaintiff has kept her identity confidential to date is a factor for the Court to consider. *Sealed Plaintiff*, 537 F.3d at 190. Here, Plaintiff has maintained her anonymity to date, and has not disclosed her identity in any public forum. Consequently, this factor weighs in favor of allowing Plaintiff to proceed under a pseudonym.

**H. Factors 8 & 9: The public interest in the litigation is furthered by allowing Plaintiff to proceed anonymously; the public interest in knowing the victim's identity is atypically weak.**

"The equation linking the public's right to attend trials and the public's right to know the identity of the parties is not perfectly symmetrical." *Stegall*, 653 F. 2d 180 at 185. "The public right to scrutinize governmental functioning, is not so completely impaired by a grant of anonymity to a party as it is by closure of the trial itself, as the assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Richmond*

*Newspapers, Inc.*, 448 U.S. at 599-600.

The public interest is not harmed by allowing Plaintiff to proceed anonymously, and the public interest itself in knowing the identity of Plaintiff is an atypically weak one. While the presumptive openness of proceedings is a cornerstone of the American legal system, there is a greater interest in affording a victimized plaintiff, such as Jane Doe, her day in court without Defendants deterring her from pursuing her claims by forcing the plaintiff's public identification. The enforcement of federal sex trafficking laws benefits the public, while the identification of Plaintiff does little, if anything, to further public welfare. *Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d at 872; *Advanced Textile Corp.,* 214 F.3d at 1072-73.

The public has an interest to see cases tried on their merits. *Advanced Textile Corp.,* 214 F.3d at 1073. In *Advanced Textile Corp.,* the plaintiffs filed claims as a class action under the Fair Labor Standards Act, based on conditions in a garment factory. The plaintiffs proceeded using pseudonyms due to the fear of severe retaliation by the Chinese government, including physical violence, deportation to China, arrest, and imprisonment. In determining whether the plaintiffs should have been allowed to proceed under pseudonyms, the Ninth Circuit evaluated several factors, including whether granting the request was in the public interest. *Id.* "[A]s the Supreme Court has recognized, fear of . . . reprisals will frequently chill [a person's] willingness to challenge . . . violations of their rights." *Id., citing Mitchell v. De Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). Measures that may have a chilling effect on a party's willingness to litigate "violations of statutes are generally considered against public policy." *Id*. In such cases, permitting the plaintiffs to use pseudonyms "will serve the public's interest in this lawsuit by enabling it to go forward." *Id.*

Similarly, as discussed above, Plaintiff is afraid to come forward out of fear of severe

retaliation and public shaming. Defendants' co-conspirator, Nygard, is known to pay people to discredits his victims in the media. This lawsuit directly discusses Nygard's involvement in Defendants' sex trafficking and would therefore, subject Plaintiff to the same danger and public scrutiny.

Consequently, requiring Plaintiff to proceed with the litigation as a publicly named party will have a chilling effect for others. Compelling the identification of Plaintiff will also deter all sex trafficking litigation. Denying victims of sex trafficking anonymity in the appropriate circumstances—such as here—will only further allow Defendants and other sex traffickers to continue without detection or interference by the law. It is in society's best interest to allow Plaintiff to proceed anonymously. Accordingly, this factor weighs in favor of granting Plaintiff's motion.

### I. Factor 10: There are no alternative mechanisms for protecting the identity of Plaintiff.

Nygard and his sex trafficking venture, including his co-conspirators, has already been in the forefront of the media and will continue to garner considerable attention. The moment Plaintiff's identity is known, it will be published worldwide and will be the subject of intense media scrutiny.

In *Jane Does Nos. 1-57 v. Peter Nygard,* 3:20-CV-01288 (S.D.N.Y. 2020), 57 women have accused Nygard and the Nygard Companies, Defendants' co-conspirators, of human trafficking and rape in a class action lawsuit. A motion was heard by the United States District Court for the Southern District of New York in the Nygard lawsuit, requesting permission for the plaintiffs to proceed anonymously. The District Court Judge ruled that the plaintiffs could proceed under a pseudonym and were not required to provide their identities to the defendants prior to discovery. *See* Transcript of Proceedings (attached as "Exhibit 2"). Importantly, Jane Doe is also a plaintiff

in the Nygard lawsuit, and therefore is a beneficiary of that Court's ruling on this matter, protecting her identity from the public and Defendant's co-conspirators prior to the commencement of discovery. If Plaintiff is required to disclose her identity at this stage in the litigation it would directly contradict the ruling in the Nygard Lawsuit on the same issue. Additionally, there are no alternative mechanisms for protecting the identity of Plaintiff, which weighs in favor of granting Plaintiff's motion.

## III. CONCLUSION

After analyzing the ten *Sealed Plaintiff* factors, the balancing test clearly demonstrates that Plaintiff's need for anonymity outweighs the countervailing public interest of disclosure. Further, there is little to no prejudice to Defendants. Thus, the Court should grant Plaintiff's motion to proceed in this litigation under the pseudonym of Jane Doe. The Court should further order that all materials filed in this action, all judgments, and any other documents relating to this action shall refer to Plaintiff as Jane Doe without additional identifying information. Plaintiff further requests that this Court order that any release or deliberate disclosure of Plaintiff's identity by Defendant, to anyone outside of his legal representatives, be sanctionable and accountable to the fullest extent of the law.

Dated: November 12, 2020

Respectfully Submitted,

By: /s/ Greg G. Gutzler
Greg G. Gutzler
DICELLO LEVITT GUTZLER LLC
444 Madison Avenue, Fourth Floor
New York, New York 10022
Tel.: 646-933-1000
ggutzler@dicellolevitt.com

Adam J. Levitt
Amy E. Keller*
DICELLO LEVITT GUTZLER LLC

Ten North Dearborn Street, Eleventh Floor
Chicago, Illinois 60602
Tel.: 312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com

Mark A. DiCello
Robert F. DiCello*
Justin J. Hawal*
DICELLO LEVITT GUTZLER LLC
7556 Mentor Avenue
Mentor, Ohio 44060
Tel.: 440-953-8888
mad@dicellolevitt.com
rfdicello@dicellolevitt.com
jhawal@dicellolevitt.com

Lisa D. Haba*
**THE HABA LAW FIRM, P.A.**
1220 Commerce Park Drive, Suite 207
Longwood, Florida 32779
Tel.: 844-422-2529
lisahaba@habalaw.com

*Counsel for Plaintiff*

**Pro Hac Vice* application to be filed