# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X
                                    :
UNITED STATES OF AMERICA            :
                                    :
            - v. -                  :        SEALED INDICTMENT
                                    :
PETER NYGARD,                       :        20 Cr. **624**  (___)
                                    :
            Defendant.              :
                                    :
- - - - - - - - - - - - - - - - - - X

## COUNT ONE

### (Racketeering Conspiracy)

The Grand Jury charges:

### Background

1.   At all times relevant to this Indictment, PETER
NYGARD, the defendant, was the leader and founder of an
international clothing design, manufacturing, and supply business
headquartered in Winnipeg, Canada, with major offices and
warehouses in the United States, including New York City and
California.  The fashion business has multiple product lines and
brands, many of which bear variants on the name "Nygard."

2.   At all times relevant to this Indictment, PETER
NYGARD, the defendant, operated a constellation of corporate
entities organized in various countries, including Canada, the
United States, the Bahamas, Barbados, and Hong Kong (the "Nygard
Group").  Certain of the Canadian and U.S. entities in the Nygard
Group directly operate NYGARD's fashion business.

3.    At all times relevant to this Indictment, PETER
NYGARD, the defendant, and others known and unknown, including
employees of the Nygard Group, used company funds, employees,
resources, and influence to recruit, entice, transport, harbor,
and maintain adult and minor-aged female victims for NYGARD's
sexual gratification and, on occasion, the gratification of
NYGARD's personal friends and business associates by, among other
things, sex trafficking, interstate and international transport
for purposes of engaging in prostitution and other illegal sexual
activities, and related offenses.   NYGARD, and others known and
unknown, including employees of the Nygard Group, used force,
fraud, and coercion to cause women to engage in commercial sex
with NYGARD and others, and to remain with NYGARD against their
will.   NYGARD, and others known and unknown, including employees
of the Nygard Group, have engaged in obstructive conduct aimed at
preventing witnesses from reporting NYGARD's sexual crimes.

<u>The Nygard Enterprise</u>

4.    The Nygard Enterprise, including its leadership,
its membership, and its associates, constitutes an "enterprise" as
defined in Title 18, United States Code, Section 1961(4), that is,
a group of entities and individuals associated in fact. The Nygard
Enterprise ("Nygard Enterprise" or the "Enterprise") consists of:
(i) PETER NYGARD, the defendant; (ii) entities within the Nygard
Group, including but not limited to Nygard, Inc. (a United States

entity), Nygard International Partnership (a Canadian entity), and Nygard Holdings, Ltd. (a Bahamian entity); (iii) individuals employed by the Nygard Group; and (iv) others known and unknown.

5.     The Enterprise constitutes an ongoing organization whose members function as a continuing unit for the common purpose of achieving the objectives of the Enterprise. The Nygard Enterprise operates in the Southern District of New York and elsewhere.     At all times relevant to this Indictment, the Enterprise has engaged in, and its activities affected, interstate and foreign commerce.

Purposes of the Enterprise

6.     The purposes of the Enterprise included the following:

a.     Operating an international clothing design, manufacturing, and supply business;

b.     Preserving, protecting, promoting, and enhancing the power, reputation, and profits of the Enterprise;

c.     Enriching members and associates of the Enterprise, including PETER NYGARD, the defendant, who was the leader of the Enterprise; and

d.     Preserving, protecting, promoting, and enhancing the reputation of PETER NYGARD, the defendant.

## Purposes of Nygard and His Co-Conspirators

7.     The purposes of PETER NYGARD, the defendant, and his co-conspirators in the racketeering conspiracy were to use the façade of legitimacy created by the Enterprise, as well as the Enterprise's business operations, reputation, and resources, to facilitate and to conceal their racketeering activity, including sex trafficking, interstate and international transport for purposes of engaging in prostitution and other illegal sexual activities, and related offenses.

## The Racketeering Conspiracy

8.     From at least in or about 1995, up to and including in or about 2020, in the Southern District of New York and elsewhere, PETER NYGARD, the defendant, and others known and unknown, being persons employed by and associated with the Enterprise described in Paragraphs One through Six of this Indictment, knowingly combined, conspired, confederated, and agreed together and with each other to violate the racketeering laws of the United States, to wit, Section 1962(c) of Title 18, United States Code, that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce, through a pattern of racketeering activity consisting of:

Multiple acts indictable under:

a.    Title 18, United States Code, Sections 1591 and 2 (sex trafficking of minors and by force, fraud and coercion);

b.    Title 18, United States Code, Sections 2421 and 2 (transportation for purposes of prostitution and other illegal sexual activities);

c.    Title 18, United States Code, Sections 1512 and 2 (obstruction of justice); and

d.    Title 18, United States Code, Sections 1956 and 2 (money laundering).

9.    It was a part of the conspiracy that the defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the Enterprise.

Means and Methods of the Racketeering Conspiracy

*Overview*

10.    PETER NYGARD, the defendant, and others known and unknown, used various means and methods to solicit NYGARD's victims, who were then forcibly sexually assaulted, drugged, and/ or coerced into sexual contact with NYGARD.    NYGARD and other Nygard Group employees also transported victims over state and international lines, at NYGARD's sole direction and authority, for sex with NYGARD. Among the means and methods by which NYGARD and others pursued their illegal purposes were the following:

5

a.   Using the ruse of modeling and other fashion industry jobs or other career advancement in order to lure victims into NYGARD's orbit and to keep them there.

b.   Using Nygard Group funds to pay for "Pamper Parties" -- named for the free food, drink, and spa services that NYGARD made available at such parties -- and other victim recruitment tools, to pay sexual partners, often referred to as "girlfriends," some of whom were victims of NYGARD, and to pay for various expenses for "girlfriends," including travel, living expenses, dental work, immigration assistance, plastic surgery, abortions, child support, and medical treatments.   Payments to "girlfriends" and other victims were often thinly disguised as payroll or payments for professional contracts, with the "girlfriends" sometimes identified as models, personal assistants, or "ComCor," employees, a Nygard Group shorthand for "communications coordinator."

c.   Using Nygard Group employees to organize Pamper Parties and other victim-recruitment events, directly recruit victims, arrange travel for "girlfriends" and other victims, manage payments to "girlfriends," and manage the payment of "girlfriend" and victim-related expenses.

d.   Using Nygard Group employees, including members of ComCor, to recruit women and girls to attend Pamper Parties, dinners, and poker games by sending invitations and

follow-up communications to prospective guests and to associates of NYGARD, who also recruited victims to come to the events. ComCor employees screened attendees for their physical appearance to confirm that they would appeal to NYGARD before allowing them onto a NYGARD property.   They also photographed attendees and maintained a register of personal information of all attendees, documenting, among other things, attendees' names, contact information, weights, and physical measurements.

        e.   Using corporate travel employees of the Nygard Group and other Nygard Group resources, including a private plane, to arrange interstate and international travel for "girlfriends" and other victims.   Nygard Group employees kept records of these travel itineraries and of travel documents for "girlfriends" and other victims, including copies of adult victims' passports and, in at least one case, a copy of a minor victim's passport.

        f.   Using Nygard Group employees for property management, security services, and as drivers.   In these capacities, Nygard Group Employees arranged accommodations for "girlfriends," facilitated Pamper Parties, dinners, and poker games used to recruit and abuse victims, and controlled access to and from NYGARD's properties, including refusing to let women and girls, including "girlfriends," leave without NYGARD's approval. Drivers were also responsible for transporting NYGARD and "girlfriends" to swingers' clubs.

7

g. Using Nygard Group employees and funds to garner good publicity and to quash negative publicity related to allegations that NYGARD raped or assaulted women and girls.

h. Using Nygard Group employees and funds to intimidate, threaten, and corruptly persuade individuals who alleged that NYGARD was engaged in sexual assault and sex trafficking in the United States, Bahamas, Canada, and elsewhere, including by paying witnesses for false statements and affidavits; threatening witnesses with arrest, jail, prosecution, civil litigation, and reputational harm; and attempting to cause reputational harm and discredit potential witnesses by disseminating false or embarrassing information.

*Nygard's Victims*

11. PETER NYGARD, the defendant, and others known and unknown, including employees of the Nygard Group, used fraud, force, and coercion to cause at least dozens of adult and minor-aged female victims to engage in commercial sex by recruiting, enticing, transporting, harboring, and maintaining adult and minor-aged female victims for NYGARD's sexual gratification and, on occasion, the gratification of NYGARD's personal friends and business associates.

12. PETER NYGARD, the defendant, and others known and unknown, frequently targeted women and minor-aged girls who came from disadvantaged economic backgrounds and/or who had a history

of abuse.   NYGARD maintained control over his victims through threats, promises to grant or withhold modeling opportunities and other career advancement, granting and withholding of financial support, and by other coercive means, including constant surveillance, restrictions of movement, and physical isolation. NYGARD forcibly sexually assaulted some of his victims.   Other victims were forcibly assaulted by NYGARD's associates or drugged to ensure their compliance with NYGARD's sexual demands.   Some of NYGARD's victims were minors.

13.   To recruit victims, PETER NYGARD, the defendant, and others known and unknown, used a network of trusted associates; "girlfriends"; and Nygard Group employees.   Many of the victims were initially invited to dinners or parties at NYGARD's residences, particularly in the Bahamas and in Marina del Rey, California, where NYGARD regularly hosted dinner parties and larger, so-called "Pamper Parties" for female guests. Many victims were initially induced, coerced, and forced to have sex with NYGARD through one or more of the following: false promises of modeling or fashion industry jobs; the supply of alcohol and/or drugs, including the drugging of drinks without the victim's knowledge; and physical force.   Following sexual activity, NYGARD typically paid victims with cash that he accessed through the Nygard Group. In some instances, NYGARD intended these payments to secure a victim's silence.   In other instances, NYGARD intended these

9

payments to facilitate future sexual activity with the victim induced through force, fraud, and coercion.

14. PETER NYGARD, the defendant, and others known and unknown, maintained ongoing personal and quasi-professional relationships with certain of NYGARD's victims, whom he referred to as "girlfriends," "assistants," or both. NYGARD required these "girlfriends" to travel and to stay with him regularly, including in the Southern District of New York; to engage in sexual activity at his direction (including with NYGARD, with each other, and with others); and to recruit new women and minor-aged girls for NYGARD to have sex with.

15. PETER NYGARD, the defendant, and others known and unknown, maintained control over these "girlfriends" for the purpose of inducing additional acts of commercial sex through a variety of means including force, fraud, and coercion. For example, NYGARD and his associates provided alcohol and illegal drugs, including cocaine and ecstasy, to "girlfriends" in advance of sexual activity and threatened or berated "girlfriends" if they did not agree to participate. NYGARD sometimes forcibly assaulted "girlfriends" who did not comply with NYGARD's sexual demands – or caused others to do so at his direction or with his approval. NYGARD dictated the daily activities of "girlfriends" and the details of their appearance, including how "girlfriends" could style their hair and what clothing he would permit them to wear.

"Girlfriends" were also under constant surveillance by NYGARD and his associates and were not permitted to leave premises without NYGARD's express permission.

16.   PETER NYGARD, the defendant, and others known and unknown, paid for commercial sex using funds from the Nygard Group. Although victims were often first paid in cash on a transactional basis, once NYGARD elevated a particular victim to the status of "girlfriend," he typically paid her a monthly stipend or allowance rather than per sexual transaction, frequently by putting such "girlfriends" on the payroll of one of the entities within the Nygard Group, as "models," "assistants," or in other positions. Other victims were first employed by the Nygard Group for ostensibly legitimate positions, such as project manager or communications assistant.   NYGARD also provided payments-in-kind to these victims (including plastic surgery, medical procedures, rent, and travel), as well as making additional promises of help with their careers.   However, for these victims, NYGARD made clear that succumbing to his sexual demands was a condition of their continued employment and other benefits.

*Nygard's Means of Recruitment*

17.   "Pamper Parties," dinners, and poker games:

a.   PETER NYGARD, the defendant, and others known and unknown, recruited victims at "Pamper Parties" that NYGARD hosted at his properties in Marina del Rey and the Bahamas.   Women

11

and girls were often invited to the parties by ComCor employees. They were also sometimes invited by "girlfriends" or "assistants" or by NYGARD's friends or business associates.

      b.   Nygard Group employees were responsible for: (i) taking photographs and obtaining the contact information of Pamper Party guests to ensure that NYGARD approved of the physical appearance of each guest and to create a record of approved guests for future parties, dinners, poker games, and general recruitment; (ii) uploading this information to a corporate server or document management system, or emailing it directly to NYGARD, for NYGARD's review; and (iii) ensuring that NYGARD had supplies like condoms, lubricant, and cash available.

      c.   NYGARD, and others known and unknown, also used dinner parties and poker games at NYGARD's Marina del Ray and Bahamas properties as a means of recruitment.  Women and girls were invited through similar channels to those used for Pamper Parties, and underwent the same screening procedures as Pamper Party attendees.

      d.   At the Pamper Parties, dinners, and poker games, NYGARD frequently used a "girlfriend" or another person in his employ to approach a chosen woman or girl to indicate his interest in sexual activity.  The "girlfriend" or employee facilitated a sexual encounter by, among other things, encouraging alcohol and recreational drug use and talking favorably of NYGARD

and the opportunities he may make available to the victim. NYGARD then engaged in sexual activity with the victim on the premises and paid her cash, usually between several hundred and several thousand dollars in U.S. currency, after the interaction. At times, unwilling participants, including minor girls, were drugged to force their compliance with NYGARD's sexual demands. At other times, victims had no advance warning of NYGARD's interest in sexual activity and were instead lured to a more secluded area of the property where NYGARD used physical force and/or psychological pressure to coerce sex.

18. Sex and Swingers Club Connections:

a. PETER NYGARD, the defendant, and others known and unknown, also regularly patronized sex and "swingers" clubs with one or more "girlfriends," including clubs in New York City, Miami, Los Angeles, and Winnipeg. While at the clubs, NYGARD directed and pressured "girlfriends" through manipulation, intimidation, degradation, threats and on occasion, force, to engage in sex with other men in order to facilitate NYGARD having sex with other women and for his own sexual gratification. At these clubs, NYGARD frequently forced his victims to engage in group sexual activity to which they had not consented.

b. NYGARD also engaged in sexual "swaps" with male friends and business associates, who would bring NYGARD a "date" for sex in exchange for access to one of NYGARD's

13

"girlfriends" for sex. "Girlfriends" were not consulted in advance

that they would be traded for sex and NYGARD often pressured them

to comply with such swaps at his direction through manipulation,

intimidation, degradation, and threats.

        19.   "Girlfriend" Connections:

        a. PETER NYGARD, the defendant, and others known

and unknown, also relied on "girlfriends" and "assistants" to

identify new potential victims and facilitate NYGARD's access to

them. "Girlfriends" regularly contacted other women, including

their personal friends, inviting them to travel with them or to

visit one of NYGARD's residences.   Some "girlfriends" also

approached women and minor girls in public places like Times Square

and Los Angeles shops and invited them back to NYGARD's residence

or hotel room.   NYGARD compensated "Girlfriends" and "assistants,"

for their role in securing new sexual partners for him.

### Notice of Special Sentencing Factor

        20.   As part of his agreement to conduct and participate

in the conduct of the affairs of the Nygard Enterprise through a

pattern of racketeering activity, PETER NYGARD, the defendant, and

others known and unknown, agreed that multiple acts indictable

under Title 18, United States Code, Sections 1591(a), (b)(1), and

(b)(2) would be committed, to wit, a conspirator would, in or

affecting interstate commerce, recruit, entice, harbor, transport,

provide, obtain, advertise, maintain, patronize, and solicit, by

any means, persons, and would benefit, financially and by receiving anything of value, from participation in a venture which has engaged in any such act, knowing and in reckless disregard of the fact that (1) means of force, threats of force, fraud, and coercion, and any combination of such means, would be used to cause the persons to engage in commercial sex acts, in violation of Title 18, United States Code, Section 1591(a) and (b)(1); and (2) such persons have not attained the age of 18 years and would be caused to engage in one or more commercial sex acts, in violation of Title 18, United States Code, Sections 1591(a) and (b)(2).

(Title 18, United States Code, Section 1962(d).)

## COUNT TWO
### (Conspiracy to Commit Sex Trafficking)

The Grand Jury further charges:

21.  From in or about 1995, up to and including in or about 2020, in the Southern District of New York and elsewhere, PETER NYGARD, the defendant, and others known and unknown, willfully and knowingly, in and affecting interstate commerce, did combine, conspire, confederate and agree to recruit, entice, harbor, transport, provide, obtain, advertise, maintain, patronize, and solicit, by any means, persons, and to benefit, financially and by receiving anything of value, from participation in a venture which has engaged in any such act, knowing and in reckless disregard of the fact that (1) means of force, threats of

15

force, fraud, and coercion, and any combination of such means, would be used to cause the persons to engage in commercial sex acts, in violation of Title 18, United States Code, Section 1591(a) and (b)(1); and (2) some such persons have not attained the age of 18 years and would be caused to engage in one or more commercial sex acts, in violation of Title 18, United States Code, Sections 1591(a) and (b)(2), to wit, NYGARD, and others known and unknown, agreed to recruit, entice, harbor, transport, provide obtain, advertise, maintain, patronize, and solicit women and minor girls, including Minor Victim-1, Victim-2, and Victim-3, as alleged in Counts Three, Four, and Five respectively, and caused the women and minor girls, including Minor Victim-1, Victim-2, and Victim-3, to engage in commercial sex acts, knowing, and in reckless disregard of the fact that the women and minor girls were engaging in commercial sex acts as a result of force, threats of force, fraud and coercion, and knowing, and in reckless disregard of the fact that the minor girls had not attained the age of 18 years.

(Title 18, United States Code, Section 1594.)

### COUNT THREE
### (Sex Trafficking of a Minor and by Force, Fraud, or Coercion)

The Grand Jury further charges:

22.   In or about 2012, in the Southern District of New York and elsewhere, PETER NYGARD, the defendant, knowingly, in and affecting interstate and foreign commerce, did recruit, entice,

16

harbor, transport, provide, obtain and maintain, by any means a person, and did benefit, financially and by receiving anything of value, from participation in a venture which has engaged in such acts, knowing and in reckless disregard of the fact that force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any such combination of such means, would be used to cause the person to engage in a commercial sex act, and that this person had not attained the age of 18 years and would be caused to engage in a commercial sex act, and aided and abetted the same, to wit, NYGARD recruited, enticed, transported, provided and maintained Minor Victim-1, and caused Minor Victim-1 to engage in commercial sex acts, knowing, and in reckless disregard of the fact that Minor Victim-1 was engaging in commercial sex acts as a result of force, fraud and coercion, and knowing, and in reckless disregard of the fact that Minor Victm-1 had not attained the age of 18 years.

(Title 18, United States Code,
Sections 1591(a), (b)(1), (b)(2) and (2).)

### COUNT FOUR
**(Sex Trafficking by Force, Fraud, or Coercion)**

The Grand Jury further charges:

23.   From at least in or about 2017, up to and including or about 2018, in the Southern District of New York and elsewhere, PETER NYGARD, the defendant, knowingly, in and affecting interstate and foreign commerce, did recruit, entice, harbor,

transport, provide, obtain, advertise, maintain, patronize, and solicit by any means a person, and did benefit, financially and by receiving anything of value, from participation in a venture which has engaged in such acts, knowing and in reckless disregard of the fact that force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any such combination of such means, would be used to cause the person to engage in a commercial sex act, and aided and abetted the same, to wit, NYGARD recruited, enticed, transported, provided and maintained Victim-2, and caused Victim-2 to engage in commercial sex acts, knowing, and in reckless disregard of the fact that Victim-2 was engaging in commercial sex acts as result of force, fraud and coercion.

(Title 18, United States Code,
Sections 1591(a), (b)(1), and (2).)

## COUNT FIVE
### (Sex Trafficking by Force, Fraud, or Coercion)

The Grand Jury further charges:

24. From at least in or about 2018, up to and including or about 2019, in the Southern District of New York and elsewhere, PETER NYGARD, the defendant, knowingly, in and affecting interstate and foreign commerce, did recruit, entice, harbor, transport, provide, obtain advertise, maintain, patronize, and solicit, by any means a person, and did benefit, financially and by receiving anything of value, from participation in a venture which has engaged in such acts, knowing and in reckless disregard

18

of the fact that force, fraud, and coercion, as described in Title 18, United States Code, Section 1591(e)(2), and any such combination of such means, would be used to cause the person to engage in a commercial sex act, and aided and abetted the same, to wit, NYGARD recruited, enticed, transported, provided and maintained Victim-3, and caused Victim-3 to engage in commercial sex acts, knowing, and in reckless disregard of the fact that Victim-3 was engaging in commercial sex acts as result of force, fraud and coercion.

(Title 18, United States Code,
Sections 1591(a), (b)(1), and (2).)

## COUNT SIX
### (Transportation of a Minor for Purpose of Prostitution)

The Grand Jury further charges:

25.    In or about 2012, in the Southern District of New York and elsewhere, PETER NYGARD, the defendant, and others known and unknown, knowingly transported and attempted to transport a minor who was less than 18 years old in interstate and foreign commerce, with intent that the minor engage in prostitution, and aided and abetted the same, to wit, NYGARD, and others known and unknown, arranged to have Minor Victim-1 travel across state and international lines, including to New York, for the purpose of engaging in prostitution.

(Title 18, United States Code, Sections 2423(a) and 2.)

**COUNT SEVEN**
**(Transportation for Purpose of Prostitution)**

The Grand Jury further charges:

26.   From in or about 2017 up to and including in or about 2018, in the Southern District of New York and elsewhere, PETER NYGARD, the defendant, and others known and unknown, knowingly transported and attempted to transport persons in interstate and foreign commerce, with intent that the person engage in prostitution, and aided and abetted the same, to wit, NYGARD, and others known and unknown, arranged to have Victim-2 travel across state and international lines, including to New York, for the purpose of engaging in prostitution.

(Title 18, United States Code, Sections 2421 and 2.)

**COUNT EIGHT**
**(Transportation for Purpose of Prostitution)**

The Grand Jury further charges:

27.   From in or about 2018 up to and including in or about 2019, in the Southern District of New York and elsewhere, PETER NYGARD, the defendant, and others known and unknown, knowingly transported and attempted to transport persons in interstate and foreign commerce, with intent that the person engage in prostitution, and aided and abetted the same, to wit, NYGARD, and others known and unknown, arranged to have Victim-3 travel across state and international lines, including to New York, for the purpose of engaging in prostitution.

20

(Title 18, United States Code, Sections 2421 and 2.)

## COUNT NINE
### (Transportation for Purpose of Prostitution and Illegal Sexual Activity)

The Grand Jury further charges:

28.   In or about 2010, in the Southern District of New York and elsewhere, PETER NYGARD, the defendant, and others known and unknown, knowingly transported a person in interstate and foreign commerce, with intent that the person engage in prostitution, and with intent to engage in sexual activity for which a person can be charged with a criminal offense, and attempted to do the same, to wit, NYGARD, and others known and unknown, arranged to have Victim-4 travel across state lines, including to New York, for the purpose of engaging in prostitution, and with the intent that NYGARD would engage in one or more sex acts with Vicitm-4, in violation of New York Penal Law Sections 130.52 and 130.55.

(Title 18, United States Code, Sections 2421 and 2.)

### FORFEITURE ALLEGATION AS TO COUNT ONE

29.   As a result of committing the offense alleged in Count One of this Indictment, PETER NYGARD, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1963, any and all interests the defendant acquired or maintained in violation of Title 18, United States Code, Section

21

1962; any and all interests in, securities of, claims against, and property or contractual rights of any kind affording a source of influence over, the enterprise named and described herein which the defendants established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and any and all property constituting and derived from proceeds obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962, the offense alleged in Count One of this Indictment, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of the offense alleged in Count One.

### FORFEITURE ALLEGATION AS TO COUNTS TWO THROUGH FIVE

30.   As a result of committing the sex trafficking offenses, in violation of Title 18, United States Code, Sections 1591(a), (b)(1), (b)(2), 1594 and 2, alleged in Counts Two through Five of this Indictment, PETER NYGARD, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1594:   (1) any property, real and personal, that was involved in, used or intended to be used to commit or to facilitate the commission of the offenses, and any property traceable to such property; and (2) any property, real and personal, constituting or

22

derived from, any proceeds obtained, directly or indirectly, as a result of the offenses, or any property traceable to such property.

**Substitute Assets Provision**

31.    If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.    cannot be located upon the exercise of due diligence;

b.    has been transferred or sold to, or deposited with, a third person;

c.    has been placed beyond the jurisdiction of the Court;

d.    has been substantially diminished in value; or

e.    has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m) and Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 1594 and 1963;
Title 21, United States Codes, Section 853; and
Title 28, United States Code, Section 2461.)

FOREPERSON

AUDREY STRAUSS
Acting United States Attorney

23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

PETER NYGARD,

Defendant.

### SEALED INDICTMENT

20 Cr. ___ (__)

(18 U.S.C. §§ 1591, 1594, 1962, 2421,
2423, and 2.)

AUDREY STRAUSS
Acting United States Attorney.

**A TRUE BILL**

Foreperson.