

**DICELLO LEVITT GUTZLER**
444 MADISON AVENUE FOURTH FLOOR NEW YORK, NEW YORK 10022

GREG G. GUTZLER
GGUTZLER@DICELLOLEVITT.COM
646.933.1000

March 12, 2021

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

Re:   *Jane Doe v. Jonathan Baram, et al.*, **No. 1:20-cv-09522-ER/DCF**

Dear Judge Ramos,

     We represent Plaintiff Jane Doe in the above-referenced matter. Pursuant to Section 2.A. of the Court's Individual Rules, we respectfully submit this letter requesting a pre-motion conference in anticipation of filing a motion for sanctions against Defendants Jonathan Baram and Warren & Baram Management LLC. As set forth more fully below, Defendants have purposefully posted false and defamatory content about Plaintiff's counsel on [their website](their website), designed to improperly influence and tamper with potential witnesses in this case, including other victims. Plaintiff seeks an order, pursuant to this Court's inherent authority, requiring the immediate removal of the false and misleading content from Defendants' website, as well as attorney's fees and costs associated with Plaintiff's efforts to rectify Defendants' bad faith litigation misconduct.

     By way of background, this is an action in which Plaintiff alleges that, when she was a minor, she was brutally raped and sodomized as a direct result of Defendants trafficking her to Peter J. Nygard ("Nygard"), in violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595. The Complaint alleges that Defendants, a purported talent agent and his talent agency, used their status in the modeling and acting industry to lure Plaintiff Jane Doe, an aspiring model and actress, from Canada to New York so that Defendants could traffic her to Peter Nygard, in exchange for future clients and other benefits, including travel on Nygard's private plane and accommodations at his compound in the Bahamas. After sending nude photos of Plaintiff to Nygard, Baram trafficked her to Nygard, at which point Plaintiff was drugged, sodomized, and raped; Baram then transported her back to his own apartment where he assaulted her himself.

On February 5, 2021, the Court held a pre-motion conference on Baram's motion to dismiss. During that conference, Baram falsely represented to the Court that the website warrenandbaram.com was not under his control—even though it advertises his talent and model management services, promotes him and his agency with numerous photographs of himself, contains a personal biography page, and lists his email address (which he has used to communicate with Plaintiff's counsel on numerous occasions in relation to this litigation) as contact information.

Two weeks after that conference, on February 22, Baram used his website to inappropriately attack Plaintiff's counsel, in a blatant attempt to improperly influence and tamper with potential witnesses in this case, including other victims. Specifically, Baram posted a picture of Plaintiff's counsel with the title "Sex Traffic Model Scam Alert Greg G. Gutzler." *See* **Ex. A.** Below Plaintiff's counsel's picture, Defendants' website states: "If you receive an email regarding my agency from this individual be very careful and don't respond." *Id*. Defendants' website then falsely states that "[t]he Attorney Disciplinary / Grievance Committee has already begun an investigation against him." *Id.* It then encourages individuals to contact the Attorney Disciplinary/Grievance Committee and provides an email address created and operated by Defendants (scamlawsuit@warrenandbaram.com), in an effort to knowingly and improperly mislead and influence victims and potential witnesses into avoiding contact with Plaintiff's counsel and to instead file baseless grievances against him. *Id.* Plaintiff's counsel emailed Defendants to ask them to immediately take this content down from their website and to cease and desist from further postings, but Defendants have ignored this request.

Defendants' conduct is clearly intended, in bad faith, to deter potential witnesses (including additional victims of the sex trafficking venture) from speaking with Plaintiff's counsel and to steer them towards Baram by improper means. "The Supreme Court has made clear that a district court has inherent authority to sanction parties appearing before it for acting in bad faith, vexatiously, wantonly, or for oppressive reasons." *Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir. 1992) (sanctioning *pro se* litigants for vexatious, oppressive tactics, and other bad faith misconduct); *Carousel Foods of Am., Inc. v. Abrams & Co.*, 423 F. Supp. 2d 119, 124 (S.D.N.Y. 2006) ("Sanctions pursuant to the court's inherent authority are proper where a party uses the judicial forum for improper purposes or abuses the judicial process."). The court's inherent authority is broader than its power to impose sanctions under Rule 11, and sanctions may be made against an attorney, a party, or both. *See Carousel Foods of Am., Inc.*, 423 F. Supp. 2d at 124; *see also Dreizis v. Metro. Opera Ass'n, Inc*., No. 01 CIV. 1999 (RCC), 2004 WL 736882, at *2 (S.D.N.Y. Apr. 5, 2004). Sanctions are appropriate where, as here, "there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes." *Wolters Kluwer Fin. Servs. Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).

Baram's brazen attempt to influence and tamper with potential witnesses in this matter is not only deserving of sanctions, but is also illegal. 18 U.S.C. § 1512 makes it a federal crime, subject to a fine and up to 20 years in prison, to knowingly and corruptly persuade another person with the intent to: (1) influence, delay, or prevent the testimony of any person in an official proceeding; or (2) cause or induce any person to withhold testimony from an official proceeding. *See* 18 U.S.C. §§ 1512(b)(1) and (b)(2)(A). Courts within the Second Circuit and others have sanctioned witness tampering—even when not predicated upon a determination of criminal guilt—pursuant to the court's inherent power. *See Riley v. City of New York*, No. 10-CV-2512 (MKB),

2015 WL 541346, at *7 (E.D.N.Y. Feb. 10, 2015); *see also Harris v. SCA Rest. Corp.*, No. 09-CV-2212, 2014 WL 996249, at *4 (E.D.N.Y. Mar. 14, 2014); *Qantum Comms. Corp. v. Star Broadcasting, Inc.*, 473 F. Supp. 2d 1249, 1269 (S.D. Fla. 2007).

     Here, Defendants have intentionally posted false and misleading content on their website, for the improper and bad faith purpose of corruptly persuading, influencing, or inducing potential witnesses and victims in this matter to withhold testimony, and to improperly influence the outcome of this litigation. Thus, sanctions are not only appropriate, but required to prevent Defendants' continued misconduct. As sanctions for Defendants' serious misconduct, Plaintiff respectfully requests that the Court order that: (1) Defendants immediately remove the content relating to Plaintiff's counsel from their website; (2) Defendants will be held in contempt for any similar future violations; and (3) Defendants pay attorney's fees and costs associated with Plaintiff's request for sanctions against Defendants.

     We appreciate the Court's time and attention to this matter.

                                          Respectfully submitted,

                                          Greg G. Gutzler

cc:     Defendants via email