UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE,

                 Plaintiff,

– against –

JONATHAN BARAM and WARREN &
BARAM MANAGEMENT LLC,

                Defendants.

**OPINION & ORDER**

20 Civ. 9522 (ER)

RAMOS, D.J.:

Jane Doe brings this action against Jonathan Baram, alleging violations of 18 U.S.C. §§ 1591 and 1594—as enacted by the federal Trafficking Victims Protection Reauthorization Act ("TVPRA")—and New York law.[1]  Doc. 1.  Pending before the Court is Doe's motion for leave to proceed anonymously and for a protective order pursuant to Federal Rule of Civil Procedure 26(c).  Doc. 7.

For the following reasons, Doe's motion is GRANTED.

I.     **BACKGROUND**

Doe alleges that, when she was seventeen years old, Baram lured her to engage in commercial sex acts in connection with an allegedly decades-long international sex trafficking operation run by non-party Peter J. Nygard and his fashion companies.  Doc. 1 ¶¶ 1–6, 13.  Specifically, Doe alleges that, in 2007, Baram lured her to travel from Canada to New York City under the false pretense that he could help her become a model and actress.  *Id.* ¶¶ 7, 13–14.  At the time, Baram was operating a talent management agency.  *Id.* ¶ 8.  But additionally, according to Doe, Baram was recruiting people for Nygard to rape and sexually assault.  *Id.*

---

[1] Doe also named as a defendant Warren & Baram Management LLC ("Warren & Baram"), which failed to appear in this matter.  The Court held a conference on May 19, 2021 during which Warren & Baram was to show cause why a default judgement should not be issued in Doe's favor.  *See* Doc. 41.  Warren & Baram failed to appear at the conference and, accordingly, the Court entered a default judgment in favor of Doe.  Doc. 44.

When Doe arrived to New York City, Baram brought her to his apartment. *Id.* ¶ 15. According to Doe, Baram told her that he could introduce her to Nygard to help further her career, but in order to do so, he would need to take nude photos of her. *Id.* ¶¶ 16–18. After taking photos and sending them to Nygard, Baram took Doe to Nygard's penthouse apartment, where Baram gave her alcohol and encouraged her to drink despite knowing that she was underaged. *Id.* ¶¶ 19–21. Doe alleges that she was then taken into a bedroom to meet Nygard but soon after lost consciousness. *Id.* ¶¶ 22–24. According to Doe, she eventually awoke to Nygard raping her. *Id.* ¶¶ 25–28.

After being raped, Doe returned to a room where Baram had been waiting. *Id.* ¶ 29. Baram then took Doe back to his apartment, where she attempted to sleep on his sofa. *Id.* ¶¶ 30–31. Doe alleges that, in the middle of the night, she awoke to Baram groping her, and in the morning, she immediately gathered her belongings and left. *Id.* ¶¶ 30–33.

Doe brought this suit on November 12, 2020. Doc. 1. That same day, Doe filed the instant motion. Doc. 7. At the February 5, 2021 conference, the Court directed the parties to meet and confer regarding the protective order requested in Doe's motion. On March 12, 2021, Doe filed a status report, informing the Court that the parties had met and conferred but failed to reach an agreement regarding the protective order. Doc. 25. Baram has not filed an opposition to the instant motion; accordingly, the Court deems the motion unopposed.

## II.  LEGAL STANDARDS

### A. Motion to Proceed Anonymously

As a general rule, courts presume that any given action "must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1); *see also* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties."). Behind this presumption is a fundamental belief that the public has a right to know who is using the courts and for what general purpose. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir.

2008).  Where the suit involves a defendant's specific actions or a particular incident, open proceedings also further the judiciary's interest in a fair and accurate adjudication. *Doe v. Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006).  Further, in civil cases involving potentially damaging allegations about a defendant's conduct, "basic fairness" requires that plaintiffs disclose their real names.  *Doe v. Nygard*, No. 20 Civ. 6501 (ER), 2020 WL 4890427, at *1 (S.D.N.Y. Aug. 20, 2020).

However, in certain "extraordinary" circumstances, *id.*, particularly those that implicate serious individual privacy concerns, *Doe v. City of New York*, 201 F.R.D. 100, 101–02 (S.D.N.Y. 2001), courts may, at their discretion, permit a litigant to proceed anonymously.  In *Sealed Plaintiff*, the Second Circuit set out the standard for determining whether the given circumstances warrant such an exception, holding that "the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant."  537 F.3d at 189.  The Second Circuit suggested that courts look at ten non-exhaustive factors to assess that balance:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature;
>
> (2) whether identification poses a risk of retaliatory or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties;
>
> (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity;
>
> (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of [her] age;
>
> (5) whether the suit is challenging the actions of the government or that of private parties;
>
> (6) whether the defendant is prejudiced by allowing the plaintiff to press [her] claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court;

> (7) whether the plaintiff's identity has thus far been kept confidential;
>
> (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [her] identity;
>
> (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and
>
> (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (internal alterations, citations, and quotation marks omitted). Although the ten *Sealed Plaintiff* factors are highly instructive, courts are not required to consider any or all of them, nor must they use any particular approach, so long as they balance the relevant interests at stake when reaching a conclusion. *Id.* at 191 n.4.

### B. Motion for Protective Order

Rule 26(c)(1) provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "This rule 'confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'" *U.S. Commodity Futures Trading Comm'n v. Parnon Energy, Inc.*, 593 F. App'x 32, 36 (2d Cir. 2014) (summary order) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). "Rule 26(c) allows for the crafting of appropriate relief, including that the disclosure or discovery may be held only on specified terms and conditions." *Ambac Assurance Corp. v. Adelanto Pub. Util. Auth.*, No. 09 Civ. 5087 (JFK), 2012 WL 1589597, at *3 (S.D.N.Y. May 7, 2012) (quotation omitted).

## III.  DICUSSION

Doe argues that the *Sealed Plaintiff* factors weigh heavily in favor of proceeding under a pseudonym. In particular, Doe argues that disclosure of her identity would reveal information that is of a highly sensitive and personal nature, that it would subject her to risk of retaliation, that her identification would likely cause additional severe harm, that

4

she is particularly vulnerable to harm given her alleged status as a victim of sex trafficking, that she is challenging a wealthy and influential member of the entertainment industry, that Baram will not be prejudiced, that she has kept her identity confidential to date, that the public interest weighs heavily in favor of proceeding anonymously given that the instant suit pertains to sex trafficking, and that there are no alternative means for protecting Doe's identity. Further, Doe emphasizes that she does not object to providing her full name to Baram at the commencement of discovery, pursuant to a protective order barring further dissemination of her name and date of birth to any third parties and requiring documents containing her true name to be filed under seal. Doc. 7 at 3.

At the outset, the Court notes that this litigation involves matters that are highly sensitive and personal in nature. Doe alleges that she was raped by Nygard and sexually assaulted by Baram. The details of those attacks will undoubtedly feature prominently in this case, and Doe has a strong right to privacy in this information. *Nygard*, 2020 WL 4890427, at *3. Additionally, Doe was a minor at the time of the alleged attack. Further, in general, "the public . . . has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006). "This public interest is only stronger given the sprawling allegations of widespread sexual abuse levied against Nygard in related proceedings." *Nygard*, 2020 WL 4890427, at *3. On the other hand, Baram will experience little to no prejudice by allowing Doe to remain anonymous at this stage of the proceeding, as Doe has agreed to make her name and identity known to Baram, subject to an appropriate protective order. Taken together, then, the *Sealed Plaintiff* factors weigh strongly in favor of granting Doe's request to proceed anonymously. *See id.*

For the same reasons, the Court concludes that Doe has established that good cause exists to support a protective order. See *Plaintiffs # 1-21 v. Cnty. of Suffolk*, 138 F. Supp. 3d 264, 278 (E.D.N.Y. 2015). Although the parties have met and conferred, they

were unable to stipulate to a protective order. However, Doe has provided a proposed protective order. Doc. 25-1. That proposed order states that: Doe shall provide her full name and date of birth to Baram at the commencement of discovery, Baram shall use Doe's identity solely for the purposes of preparing for and conducting the instant suit, and Baram may disclose, communicate, and make Doe's identity available to a limited set of individuals. *Id.* Because these and the other related terms in the proposed order are appropriate for the purpose of keeping Doe's identity confidential in this proceeding, the Court grants Doe's request for a protective order. *See Ambac*, 2012 WL 1589597, at *3.

## IV.   CONCLUSION

For the foregoing reasons, Doe's motion is GRANTED. Doe is permitted to proceed in this litigation under the pseudonym Jane Doe. All materials filed in this action, including all judgments, and any other documents relating to this action shall refer to Plaintiff as Jane Doe without any additional identifying information. Any release or deliberate disclosure of Doe's identity by Baram to anyone other than his legal representatives or agents may be sanctionable.[2] The Court shall separately enter Doe's proposed protective order. Doc. 25-1. The Clerk of Court is respectfully directed to terminate the motion. Doc. 7.

It is SO ORDERED.

Dated:   August 5, 2021
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

---

[2] The Court notes that, at this time, Baram is proceeding pro se.