**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE,

                      Plaintiff,

        *– against –*

JONATHAN BARAM and WARREN &
BARAM MANAGEMENT LLC,

                   Defendants.

**ORDER**

20 Civ. 9522 (ER)

RAMOS, D.J.:

       Plaintiff Jane Doe filed this suit on November 12, 2020 against Defendants Jonathan

Baram and Warren & Baram Management LLC alleging violations of the Trafficking Victims

Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §§ 1591, *et seq.*, as well as state laws.[1]

Doc. 1.  Doe alleges Baram knowingly recruited her into the sex trafficking scheme of Peter J.

Nygard.[2]  *Id.*  In a letter dated February 26, 2021 but docketed on March 9, 2021, Baram,

appearing pro se, asserts that the federal sex trafficking claim should be dismissed due to the

expiration of the statute of limitations.  Doc. 22.  The Court, as did Doe, construes Baram's letter

as a motion to dismiss.  On August 27, 2021, Baram submitted another letter alleging that a press

release posted on Doe's counsel's website, as well as several statements made by Doe's counsel

during court proceedings, were defamatory.  Doc. 56.  The Court construes this letter as both a

motion for leave to file a counterclaim for defamation and a motion to strike portions of the

Complaint repeated in the press release.  For the following reasons, Baram's motions to dismiss

---

[1] Defendant Warren and Baram Management LLC has defaulted.  Doc. 35.

[2] Mr. Nygard has been indicted in this District on counts of racketeering conspiracy and related charges concerning his alleged sex trafficking of children and adult women.  *U.S. v. Nygard*, 20 Cr. 624.

the TVPRA claims, for leave to file a counterclaim, and to strike portions of the Complaint are DENIED.[3]

I.    **Statement of Facts**

Doe filed the Complaint on November 12, 2020.  Doc. 1.  The Complaint has since been sealed, and a redacted version of the Complaint has been filed.  Doc. 1.  In the Complaint, Doe alleges that in 2007, Baram lured and transported Doe to the apartment of Peter J. Nygard, the alleged leader of an international sex trafficking scheme, knowing that Nygard "was waiting there to rape her."  Doc. 1 at 2.  Doe also alleges that Baram waited outside while Nygard did rape her and then transported her back to Baram's apartment, where he also sexually battered her.  *Id.*  In support of these allegations, Doe includes several photographs of Baram, including one photograph Doe states was taken from Baram's social media profile, Doc. 58 at 2, captioned "HEBREW PIMP 'THE CHOSEN PEOPLE,'" which Doe uses to argue that Baram is a "self-proclaimed 'pimp.'"  Doc. 1 at 5.  On November 18, 2020, counsel for Doe issued a press release and posted it on their website stating, in relevant part:

> Jonathan Baram . . . [is] being accused of knowingly and actively recruiting young women for Nygard as part of a sweeping international sex trafficking venture. . . .[4]  **[Doc. 1 at ¶ 2.]**  [Baram is] accused of enticing another of Nygard's victims, who was a 17-year-old girl at the time, to travel to New York in 2007, on the pretense of offering her acting and modeling representation, with knowledge that she would be sex trafficked to Peter Nygard.  **[Doc. 1 at ¶ 7.]**  Baram is accused of luring the victim from Canada to his New York apartment, coercing her into posing for nude photos, which he sent to Nygard, and subsequently taking her to Nygard's penthouse apartment, where he knew that she would be raped.  **[Doc. 1 at ¶¶ 15–20.]**  The lawsuit alleges that Nygard Company employees and Baram plied the victim with alcohol spiked with drugs and encouraged her to drink, even though they knew she was underaged.  **[Doc. 1 at ¶ 21.]**  The complaint details, how, shortly after Jane Doe was taken into a bedroom to "meet" with Nygard and discuss "modeling," she lost consciousness.  **[Doc. 1 at ¶¶ 22–24.]**  The lawsuit explains that the victim awoke to find Nygard on top of her, sodomizing her, continuing to attack her even as she resisted.  **[Doc. 1 at ¶¶ 26–27.]**  After Nygard

---

[3] Baram's recent letter requesting the press release be removed, Doc. 68, is denied as moot.

[4] All citations to the Complaint, Doc. 1, within this text have been added by the Court.

assaulted the victim, the lawsuit describes how Baram then took the victim back to his apartment, where Baram groped her as she begged him to stop.  **[Doc. 1 at ¶¶ 30–32.]**  While Baram purports to run a talent agency for models and actresses, the Complaint posts pictures of Baram in which he proclaims himself to be a "pimp."  **[Doc. 1 at ¶ 12.]**

Doc. 70.  The press release also contains a link to the Complaint.  As noted, each of the allegations in the press release are also included in the Complaint, with no additional allegations about Baram included in the press release that were not also a part of the Complaint.  *See* Doc. 1 at 6–7.

## II.   Standard of Review

In general, because Baram is appearing pro se, the Court will read his letters liberally, construing them as raising the strongest arguments they suggest.  *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

### A.  Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 557).  However, this "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss.  *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal citations and quotation marks omitted).

Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable . . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

### B. <u>Motion for Leave to File Counterclaim</u>

Because Baram has not yet answered the Complaint and is appearing pro se, the Court will permit his counterclaim only if the counterclaim could withstand a motion to dismiss. Baram's counterclaim for defamation thus must satisfy the same legal standard as outlined above.

### C. <u>Motion to Strike</u>

Rule 12(f) of the Federal Rules of Civil Procedure allows the court to "strike from a

4

pleading . . . any redundant, immaterial, impertinent, or scandalous matter." To prevail on a motion to strike, a party must demonstrate that 1) no evidence in support of the allegations would be admissible; 2) the allegations have no bearing on the issues in the case; and 3) to permit the allegations to stand would result in prejudice to the movant." *Acco, Ltd. v. Rich Kids Jean Corp.*, No. 15 Civ. 7425 (JSR), 2016 WL 3144053, at \*1 (S.D.N.Y. Apr. 11, 2016) (collecting cases). Courts should not tamper with the pleadings unless there is a strong reason for doing so, and motions to strike are generally disfavored. *See Hunley v. Buzzfeed, Inc.*, No. 20 Civ. 8844 (ALC), 2021 WL 4482101, at \*5 (S.D.N.Y. Sept. 30, 2021).

III.   **Discussion**

   A. **Motion to Dismiss**

An affirmative defense of statute of limitations generally must be pled and proved in an answer to a complaint. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). However, an affirmative defense may be raised in a pre-answer motion to dismiss if the defect appears on the face of the complaint. *Id.* at 426. Baram has not yet answered the Complaint, and his letter does not demonstrate how the facts in Doe's Complaint prove that the statute of limitations has passed. Baram does not reference any dates or any applicable statute of limitations. Rather, Baram simply states that the statute of limitations on the TVPRA claim has expired and "nothing [he] did warranted equitable tolling." Doc. 22. However, in light of his pro se representation, the Court will turn to the Complaint to see whether, on its face, a statute of limitations defect exists.

The Complaint discusses events that took place in 2007, approximately 13 years before the filing of the Complaint, when Jane Doe was 17 years old. Doc. 1 at ¶ 13. The Complaint does not state the statute of limitations for the relevant statutes, but does claim that the statute of

limitations is equitably tolled for Doe's TVPRA claims. *Id.* at ⁋ 62.  According to the Complaint, Doe "pursued her rights diligently and was impeded because of a combination of force, threats of force, shame, embarrassment, fear," etc., and thus should be extended equitable tolling. *Id.* at ⁋ 64.  Additionally, Doe alleges that the statute of limitations is tolled under the continuing violation doctrine for all victims of Nygard's sex trafficking scheme as well as against Defendants because of their continued conspiracy to commit rape, sexually assault, sex traffic, and cover up their crimes. *Id.* at ⁋ 83.  Further, Doe claims the conspiracy was only discovered upon the filing of *Jane Does Nos. 1-57 v. Nygard, et al*, No. 20 Civ. 01288 (ER) (S.D.N.Y), filed in February of 2020, which has the effect of tolling the conspiracy claims under the discovery rule. *Id.* at ⁋ 85.

In light of these arguments in the Complaint, it is not obvious that the statute of limitations was expired.  Additionally, and perhaps dispositively, Doe points out in her opposition to Baram's letter that any stale claims would be revived under the New York Child Victims Act ("NYCVA"), N.Y. C.P.L.R. § 214-g.  The NYCVA states in relevant part:

> Notwithstanding any provision of law which imposes a period of limitation to the contrary and the provisions of any other law pertaining to the filing of a notice of claim or a notice of intention to file a claim as a condition precedent to commencement of an action or special proceeding, every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense as defined in article one hundred thirty of the penal law committed against a child less than eighteen years of age, . . . which is barred as of the effective date of this section because the applicable period of limitation has expired, . . . is hereby revived, and action thereon may be commenced not earlier than six months after, and not later than two years and six months after the effective date of this section.

N.Y. C.P.L.R. § 214-g.

In the Complaint, Doe has clearly alleged intentional actions by Baram causing physical and psychological harm.  *See, e.g.*, Doc. 1 at 6–7.  Doe has also alleged that she was a minor in

2007 at the time of these allegations.  *Id.* at ¶ 13.  Doe has also alleged conduct that, if proven, could constitute a sexual offense under N.Y. Penal L. § 130, including §§ 130.20 (sexual misconduct), 130.25 (third degree rape), 130.35 (first degree rape), 130.40 (third degree criminal sexual act), 130.50 (first degree criminal sexual act), 130.52 (forcible touching), 130.55 (third degree sexual abuse), 130.60 (second degree sexual abuse), 130.65 (first degree sexual abuse), 130.90 (facilitating a sex offense with a controlled substance), and 130.91 (sexually motivated felony, with sex trafficking of a child as the specified offense).  *Id.* at 6–7.  Lastly, the NYCVA was signed into law and took effect on February 14, 2019, so Doe's Complaint, filed a little over a year after the window opened, was filed within the revival window.  Therefore, even if the statute of limitations had expired on Doe's claims, it would be revived under the NYCVA.

Because "a court must deny a motion to dismiss based on the statute of limitations unless all assertions of the complaint, as read with required liberality, would not permit the plaintiffs to prove that the statute was tolled," *In re S. Afr. Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009), Baram's motion to dismiss is DENIED.

## B.  <u>Motion for Leave to File Counterclaim</u>

Baram alleges that Doe has sent "false press releases" about this case to media outlets and posted a press release before he was served with the lawsuit.  Doc. 56 at 1.  Specifically, Baram is concerned with the press release's labeling of him as a "major global sex trafficker with Nygard," a "child rapist," and someone who secretly put drugs in Doe's drink.  *Id.*  Baram also takes issue with the press release for the inclusion of an image of him from about 14 years ago with the caption "Hebrew Pimp," which he alleges was taken "out of context with malicious intent."  *Id.* at 1–2.  He also states that the press release has interfered with his industry and modeling clients by painting him as a "sleezy Hollywood agent."  *Id.* at 2.  Baram also takes

issue with several claims that counsel for Doe made during conference calls with the Court and Baram, including allegations that he drugged Doe and that he proclaimed himself to be an illegal pimp. *Id.* at 2, 4. The Court interprets these arguments as a motion for leave to file a counterclaim of defamation.

Doe argues that this counterclaim should be denied. Doe cites the litigation privilege under New York law, which provides that "statements made by parties, attorneys, and witnesses in the course of a judicial or quasi-judicial proceeding are absolutely privileged, notwithstanding the motive with which they are made, so long as they are material and pertinent to the issue to be resolved in the proceeding." *Lipin v. Hunt*, No. 14-CV-1081 (RJS), 2015 WL 1344406, at *8 (S.D.N.Y. Mar. 20, 2015) (internal quotation and citation omitted). The privilege applies not only to pleadings but also to statements made between attorneys and parties as well as in judicial proceedings. *Id.* Thus, "allegedly defamatory statements are protected if they may possibly be pertinent to a proceeding." *Id.* The Court agrees with Doe that the statements at issue made during conferences with the Court are protected by the litigation privilege. The nature of Baram's alleged conduct, including whether he drugged Doe and has called himself a pimp, is directly pertinent to the claims Doe alleges in the Complaint. Therefore, statements made during those conferences are privileged, and any counterclaim alleging defamation based on the statements would be futile. Baram's motion for leave to file a counterclaim regarding the contents of the Complaint or any statements at Court conferences is thus DENIED.

As for the press release, Doe argues that a counterclaim regarding the contents of the press release would be futile because the press release is entitled to immunity under Section 74 of the New York Civil Rights Law. Section 74 states:

> A civil action cannot be maintained against any person . . . for the publication of a fair
> and true report of any judicial proceeding, legislative proceeding or other official

proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

N.Y. Civil Rights Law § 74.  Doe argues that because the press release accurately conveys the content already pleaded in the Complaint, it is a true and fair report of judicial proceedings immune under Section 74.  The Court agrees.  The press release discusses how Baram is "accused of" the various claims, and states that the lawsuit "alleges" that Baram spiked Doe's drink, among other allegations.  Doc. 70 at 2–3.  The press release does no more than restate the allegations in the Complaint, and is a fair report of the pending judicial proceeding.  *See Southridge Cap. Mgmt., LLC. v. Lowry*, No. 1 Civ. 4880 (RO), 2003 WL 68041, at *2 (S.D.N.Y. Jan. 7, 2003) (granting a motion to dismiss a defamation counterclaim related to a press release regarding a pending case).  Therefore, the press release and its subsequent transmittal to media outlets as alleged by Baram is immune from defamation claims.  Baram's proposed counterclaim for defamation regarding the press release would thus be futile, so his motion for leave to file a counterclaim of defamation based on the press release is DENIED.

### C.  Motion to Strike

Baram argues that the press release is "prejudicial" with "complete false representations of the truth."  Doc. 56 at 1.  He claims that the allegations that he is a sex trafficker and child rapist as well as that he spiked drinks are false and prejudicial and have "tampered with [his] witnesses."  *Id.*  He also states that the press release has interfered with his industry and modeling clients by painting him as a "sleezy Hollywood agent."  *Id.* at 2.  Baram also takes issue with the inclusion of the picture captioned "Hebrew Pimp" within the linked Complaint on the press release, which he believes also constitutes witness tampering and is extremely prejudicial.  *Id.*  He asks that the picture be stricken "everywhere."  *Id.*  Lastly, Baram takes issue with the Complaint for labelling him as a "pimp as a fact."  *Id.* at 4.  The Court construes these

9

arguments as a motion to strike the portions of the Complaint Baram references as repeated in the press release.

The allegations Baram references from the Complaint, which are restated in the press release, are material and pertinent to the claims Doe alleges.  While the allegations may result in some prejudice to Baram, they have direct bearing on the issues in the case and can possibly be proven through admissible evidence.  Baram's alleged behavior towards Doe and representations he made about himself using the word "pimp" are plainly relevant to her sex trafficking claims. *Contrast Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 512 (S.D.N.Y. 2013) (striking portions of the Complaint that were immaterial and irrelevant to the claims and served no purpose except to inflame the reader).  Baram is entitled to dispute the claims and the meaning of the word "pimp" in discovery and subsequent proceedings, but the Court finds no reason to strike them from the Complaint.  Baram's motion to strike is thus DENIED.

## IV.   Conclusion

For the above reasons, Baram's motions to dismiss, for leave to file a counterclaim, and to strike portions of the Complaint are DENIED.

SO ORDERED.

Dated: October 15, 2021
       New York, New York

_____
Edgardo Ramos, U.S.D.J.

10