1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   JANE DOE,

4                   Plaintiff,

5           v.                              20 CV 9522 (ER)

6   JONATHAN BARAM, *et al.*,

7                   Defendants.             Conference
                                            (via Telephone)
8   ------------------------------x
                                            New York, N.Y.
9                                           October 7, 2021
                                            4:30 p.m.
10
    Before:
11
                         HON. EDGARDO RAMOS,
12
                                            District Judge
13

14                       APPEARANCES

15  LISA D. HABA
        Attorney for Plaintiff
16      -and-
    DiCELLO LEVITT GUTZLER LLC
17  BY:  GREG G. GUTZLER

18  JONATHAN BARAM, Defendant *Pro Se*

19

20

21

22

23

24

25

1              (Case called)

2              MS. HABA:  Lisa Haba from Haba Law Firm for plaintiff.

3              MR. GUTZLER:  Greg Gutzler from DiCello Levitt Gutzler

4    for plaintiff.

5              MR. BARAM:  Jonathan Baram representing myself.

6              THE COURT:  Good afternoon to you all.  This matter is

7    on for a conference.

8              I note for the record that it is being conducted by

9    telephone.

10             There has been so much correspondence coming through

11   that I frankly forgot who asked for this conference.  Let me

12   also note for the record -- someone has a lot of background

13   noise where they are.  Thank you.

14             MR. BARAM:  Hold on one second.  Let me see if that's

15   myself.

16             Is that better, your Honor?

17             THE COURT:  That's much better.

18             MR. BARAM:  I'm sorry about that.

19             THE COURT:  I note for the record as well that just a

20   couple of minutes ago we received an e-mail from Mr. Gutzler, I

21   believe, indicating that I may find these helpful.  I have not

22   had an opportunity to review them, but, Ms. Haba, or

23   Mr. Gutzler, let me begin with you.  What is happening?

24             MS. HABA:  Good afternoon, your Honor.

25             I believe, if I recall, there was a letter motion put

1   through by the plaintiff's team asking the Court for assistance

2   and potentially for sanctions against Mr. Baram.

3           Specifically, we explained that we have had an ongoing

4   plethora of materials that have been coming through.  So part

5   of the exhibits I have sent are exhibits that are just a

6   sampling of the 229 e-mails that our team has received from

7   Mr. Baram.  He has been engaging in a method of communication

8   that has become to a point where we are no longer able to

9   communicate adequately to be able to move the case forward and

10  would seek the Court's assistance in moving this case forward

11  ultimately to trial.

12          To give you some examples, I have gone through the

13  exhibit.  We did give a copy to Mr. Baram as well so he can

14  reference it.  We have received these e-mails repeatedly.  They

15  get sent at this point on a daily basis.  But I have given you

16  one copy of each.  There has been, obviously, many of them that

17  have been sent over many days.

18          The exhibits show things such as, he has claimed that

19  he is going to be filing multiple lawsuits against the

20  plaintiff's lawyer.  It's his life's mission to financially

21  ruin the plaintiff's team.  He has sent e-mails both to the

22  team as a whole, as well as to me personally as the only one he

23  singled out, but saying that this is not only e-mails calling

24  it reciprocity, but saying that he is suing us for matters that

25  are beyond the subject matter of this motion, just as a

 1    vindictive attempt to get back at us for suing him.

 2            He has indicated he has hired a personal investigator

 3    to look into us and to try to make sure that we are -- I guess

 4    he is looking for information to go after us.  He wants us to

 5    lose our law licenses.  He has instructed people upon his death

 6    to come after us as well with endless litigation for the rest

 7    of our lives.  He has indicated he is going to destroy us

 8    financially.

 9            In addition to the threats of that nature, he has also

10    taken to insults.  He uses swear words such as -- forgive me,

11    but the word is bullshit he uses throughout e-mails.  I have

12    included some of those examples for your Honor.

13            He calls Frank Amanat, one of our attorneys, a liar

14    over and over again.  When he refers to myself, he calls me

15    unprofessional, a liar.  He says I lack impulse control.

16            I believe, just for the Court's knowledge, there was a

17    phone call that Mr. Amanat and I were both on with him.  I was

18    asked the question of what we are pursuing against him, and I

19    used the phrase, we have accused you of being a sex trafficker,

20    because it wasn't being clear what we were accusing him of.

21    Based on the communications we were having, he has now turned

22    that into, apparently, he has claimed that was yelling at him,

23    which I was not.

24            One of the e-mails you'll see, he said he will not

25    read any e-mail that I send to him, so he has been sending me

1    e-mails that are disparaging in nature but will not respond to

2    any e-mail about the case that is sent to him if it was sent

3    from me.  He will respond to the other attorneys on the team.

4            He has called us ambulance chasers.  He signs some of

5    his e-mails with phrases such as love and kisses, Johnny,

6    Greggy, I am going to go to the beach while you work, things of

7    that nature.

8            He also has sent things, such as -- to me personally

9    he sent an e-mail indicating that God is watching me because I

10   called him a sex trafficker was the phrasing.

11           Throughout this, in addition to the harassment of the

12   lawyers, he has been disparaging Jane Doe.  Jane Doe, he has

13   indicated he has threatened in his communications to depose

14   her, for one e-mail it was seven hours.  Another e-mail it was

15   many, many, many hours.  Obviously, the context of it is the

16   point of harassment.  He refers to her routinely as liar Jane

17   Doe.  He has talked to her about how she is going to go to jail

18   for lying, and things of that nature.

19           At this point, your Honor, we are concerned that if he

20   finds out her identity, much less has an opportunity to

21   cross-examine her as the direct individual that we, obviously,

22   allege that he's the one that sex-trafficked her, if he is the

23   individual cross-examining her, that will not only be

24   traumatizing at this point, based on what he has promised to

25   do, but will, quite frankly, be to a level of extreme

harassment of Jane Doe that I don't think would be appropriate

for any court of law.

I would note for the Court that we did go to a

settlement conference.  I will not, of course, talk about any

of the content of that communication, because that would be

confidential.

But I do want to note for the Court that one of the

nonconfidential things that happened during that is Mr. Baram

was ordered by the magistrate judge to cease engagement in

threats and harassment of the plaintiff's team.  I note that

because he specifically was told to stop the threats of

financial harm, and he explained that he felt that he didn't

realize that was a problem, and he understood it now.  That

settlement conference was on 9/8.  That order given to him to

cease and desist was on 9/8 of this year.

Since that time, it has intensified.  We now get

multiple e-mails a day.  We get multiple threats of financial

harm a day, in direct contradiction to that court order.  As

recently as the settlement report that was recently submitted,

I have given the Court the e-mail that I sent to Mr. Baram.  He

sent us his settlement report before he filed it.  I explained

to him that it went into the details of the settlement

conference.  Obviously, that would not be permissible or proper

under the rules and under the direct order of the magistrate

judge.  I know he filed it anyway, and, of course, we filed our

1  own that was separate from his.

2          At this point, your Honor, we are seeking to move this

3  case forward.  We would like to bring it to resolution.

4  Obviously, as we indicated in our settlement reports, I don't

5  think there is a settlement that is foreseeable at this point

6  in time, so we are proceeding to a trial.

7          We'd like to move this expeditiously forward, but I

8  don't think we can do so currently with the current ability

9  to -- lack of communication that is appropriate, much less

10  productive.

11          At this point I don't know if the Court would be

12  inclined to address maybe -- I don't know if you want to do it

13  in this hearing or another hearing, but we need a strategy to

14  move forward, and we just can't do it with Mr. Baram currently.

15          We would ask the Court, as a sanction, to determine

16  that Mr. Baram cannot be the one to cross-examine Jane Doe in

17  the trial.  I fully understand that he will need the ability to

18  cross-examine her, but he, as the direct person asking the

19  questions, based on everything that's happened to date, I

20  believe would be highly improper and would be very problematic.

21          I have some potential suggestions to the Court for

22  ways to remedy that where he can still have the ability to

23  advocate for his side and defend his case, but it wouldn't be

24  done in such a way that it would be harassing and traumatic to

25  Jane Doe.

1          I also don't believe, your Honor, that the protective

2     order written as it would be for most cases will be appropriate

3     here.  He has indicated, and we have seen conduct to date that

4     would indicate that we can't trust that he is going to do what

5     he says.  He has done everything to include promising to

6     publish her name, and that would be in direct contradiction to

7     the protective order that he signed.

8          I would think at this point, your Honor, that's

9     ultimately the ask of the plaintiff's team to the Court.

10          THE COURT:  What specifically are you asking?

11          MS. HABA:  We are asking the Court to prevent Mr.

12     Baram from being the individual to ask the questions of Jane

13     Doe at trial.  We are also asking the Court that at this point

14     I don't think it's safe to give his name to her because he has

15     promised to directly counter the Court's protective order, so

16     we would ask for a default on Mr. Baram for the conduct because

17     there is no way that we can adequately bring this forward with

18     Mr. Baram being the one on the other side.  He is *pro se*.  I

19     understand he doesn't have to have a lawyer.  But lack of his

20     lawyer on his side has been a real problem.

21          THE COURT:  That's two things.  You are asking me to

22     preclude him from cross-examining the plaintiff at trial, and

23     then you are asking that a judgment be entered against him as a

24     sanction.

25          MS. HABA:  We are asking the judgment as the primary

1    sanction, and we are asking, in the alternative, to not allow

2    him to cross-examine Jane Doe at trial.

3              THE COURT:  Mr. Baram, let me hear from you.

4              MR. BARAM:  Good afternoon, your Honor.

5              What you just heard, most of that was not true at all.

6    They are trying to use me as an excuse to back out of this case

7    now.  I don't know exactly why.  But I'm innocent and I know

8    that eventually they would try to back out.  Now they are just

9    using it as an excuse, and they are hoping to get this

10   injunction against me.

11             I have sent many e-mails.  I have got one response

12   from Frank regarding removing the address on the LLC.  He said

13   it wasn't there, and I replied it's on page 15.  I have not

14   heard from him since.

15             The reason why I'm not communicating with Lisa Haba,

16   what she told you is not true, and this is my take on our

17   conversation.  We were speaking.  It was a very confrontational

18   conversation.  I was very emotional inside, trying very hard to

19   be respectful and not use curse words and not go at them and

20   try to have a conversation.

21             And I suggested, can we turn me into a Jane Doe, where

22   it would be John and Jane Doe.  That way, I'm not affected by

23   that.  That might have been a naive impression by my part.  It

24   was an idea.  And Lisa was interrupting me as I was trying to

25   explain this, basically saying, we are not here to talk about

 1    that.

 2           She yelled at me and called me a sex trafficker.  I

 3    wish it was recorded.  I should have recorded it.  Lisa yelled

 4    at me.  I said I cannot communicate with her from this point

 5    forward.  I will not respond to any of her e-mails.  Yes, I did

 6    send her e-mails because she is part of the lawsuit.  I told

 7    Frank that I will not respond to Lisa, but I will respond to

 8    you guys via e-mail.  Every time we speak on the phone, you

 9    guys lie about the conversation.  Let's keep it via e-mail so

10    it's documented.

11           I did call them liars.  The *pro se* department said,

12    John, you are allowed to call them liars because they are

13    lying.  They are calling you a sex trafficker.

14           Your Honor, bear with me for one second.  My family

15    and I have received death and property threats due to this

16    press release they have conspired to create.  They distributed

17    it to the press and to other prominent websites.  They were the

18    original creator of this defaming content.  As a result,

19    Wikipedia copy and pasted exactly what they said about me.

20    That's a direct line from their website.

21           My mother had a nervous breakdown because of this

22    press release.  Where is their empathy, your Honor?  Our

23    families should be separate from this lawsuit.

24           My adversary has labeled me a child predator and a

25    child rapist, with no evidence but the word of a failed model

1   who works as an escort and a stripper and desperate for fame

2   and money.

3          My adversary took advantage of Jane Doe's weaknesses,

4   which is desperation to be a model.  I believe as a fact -- I'm

5   not disparaging her.  It's quite apparent my adversary is only

6   concerned with my counter lawsuit, and they can care less about

7   Jane Doe.

8          I beg you to remove the address from the LLC.  It's

9   not an office.  It's a home address, an elderly relative who is

10  live is at risk.  I have dissolved the LLC with New York State,

11  New York, so they need to remove the address.  My adversaries

12  will not remove it, purely out of spite and not logic.

13         THE COURT:  Mr. Baram, let me stop you there for a

14  second.

15         Let me ask Ms. Haba.

16         Ms. Haba, is there an issue with removing the address

17  of the LLC, particularly if, as Mr. Baram says, it's also a

18  residence?

19         MS. HABA:  Your Honor, the issue is that we have

20  establish a venue and this is the registered address in the

21  State of New York for the LLC that's on the registration page.

22  We obviously have to meet our legal obligations to meet the

23  elements, including venue.

24         THE COURT:  Venue can be established by a submission

25  that a particular party is registered and/or domiciled in a

 1 | particular state without giving street addresses.  I rarely see

 2 | street addresses in complaints.

 3 |          MS. HABA:  That is correct, your Honor.  No, I don't

 4 | have a problem with doing that.  The reason we haven't been

 5 | responding to Mr. Baram is because he hasn't done anything more

 6 | than -- you can read the communications.  They have been

 7 | incredibly abusive and harassing.

 8 |          Yes.  To answer your question, I can remove it, and we

 9 | can just do New York.  I guess we have to amend the complaint

10 | to do so.

11 |          THE COURT:  Or you can submit a redacted complaint

12 | with that address redacted.

13 |          MR. BARAM:  Your Honor, can I respond?

14 |          THE COURT:  We have just gotten that issue taken care

15 | of, Mr. Baram.

16 |          MR. BARAM:  May I continue, your Honor?

17 |          THE COURT:  You may.

18 |          MR. BARAM:  I just want to reiterate, I dissolved the

19 | LLC.  I did my part.  So I did everything correct.  Thank you.

20 |          On this malicious nonsection press release, they claim

21 | the rape took place in my private apartment.  I didn't know

22 | there was such thing as a public apartment.  The date they

23 | picked was 2017, which was a stab in the dark.  On the actual

24 | nonfiction, legal complaint filed with the Court, they said the

25 | rape took place in 2007.  This nonfiction rape could not have

1    taken place on both 2007 and 2017.

2              How can multiple attorneys get the year so wrong?

3    It's because there was evil pathological lies in the beginning.

4    They can't keep up with the lies.  If you check with the court

5    recording, Frank Amanat lied multiple times to you.  These lies

6    affect the case greatly and should dismiss the case.  This is

7    another example of their chaotic, disorganized, frivolous

8    lawsuit brought by adversaries.

9              If you ask me to provide today with evidence of where

10   I lived in 2007 and 2017, I can provide that with my driver's

11   license, tax ID, medical records.  If you ask my adversaries to

12   provide today, if I owned or rented an apartment in Manhattan,

13   they could not.  They can't prove my location today.  The whole

14   case falls apart.

15             They would have been better off lying, saying the rape

16   took place in the Bahamas, because that's where I actually met

17   Peter Nygard.  I was on the record saying I went to a birthday

18   party.  What a mistake that was.  Guess what.  They can't

19   change the complaint.  It would have been a much more

20   productive lie, your Honor, if my adversary said, it happened

21   in the Bahamas, but they rolled the dice.

22             THE COURT:  Mr. Baram, let me stop you again because I

23   just want to make sure that we remain focused.  You are raising

24   a number of different issues.

25             Let me just say this.  I'm looking quickly over the

1    e-mails that Ms. Haba or Mr. Gutzler sent just a few moments

2    ago, and it does appear that you do use the words that Ms. Haba

3    said you used, that you signed them love and kisses, that you

4    called them liars, etc., that you called Jane Doe a liar.

5            Let me tell you this.  If someone from the Legal Aid

6    bureau told you that it's OK to call opposing counsel liars,

7    they gave you bad information.

8            MR. BARAM:  OK.  I was told that by the attorney.

9    Because they are lying about it, you could say it.  That's what

10   he said.  I asked him, what's the political correct way to say

11   these guys are lying?  Because I called them liars.  They

12   called me a child predator.  They called me a child predator

13   and --

14           THE COURT:  Mr. Baram, I'll hear you, but I want to

15   deal with these issues as efficiently as possible.

16           I would tell you this.  You are not a lawyer.  But if

17   there were a lawyer on the other side and that lawyer was

18   sending these types of communications using this type of

19   language, that lawyer would be sanctioned immediately.  It's

20   not because of you.  It's because once you are in federal

21   court, this is not the way we treat opposing counsel and this

22   is not how we treat our adversaries.

23           I understand that you are upset.  I understand that

24   you are frustrated by the way this case has been going.  But I

25   will not allow, I cannot allow any side, *pro se* or attorney or

1   what have you, to engage in this type of correspondence.  So

2   please, please stop.

3              You mentioned the press release.

4              Ms. Haba, is this a press release that was issued in

5   connection with the filing of the complaint?

6              MS. HABA:  Yes.  My cocounsel, Dicello Levitt Gutzler,

7   issues press releases routinely whenever they file a lawsuit.

8   They put a press release on their website.  There is no

9   pictures in it, as referenced.  It's just words.  There is a

10  link to the complaint.  It's on their website if you look for

11  it.  I don't know how easy it is to find it.  There was no

12  massive pushout to all these different media sites, as has been

13  claimed.  It's simply on their website, as often law firms do.

14             There was a typo in it where it said 2017.  That has

15  been corrected, actually, several weeks ago.  I know Mr. Baram

16  has continued to put forth that it has not been changed.  But

17  if you look on the website, it was changed -- I believe it was

18  in the first week of September, if I recall, when they changed

19  it or maybe the second week of September.

20             THE COURT:  Let me ask you, Ms. Haba, that press

21  release, was that issued and posted one time in connection with

22  the filing of the complaint, or have subsequent press releases

23  been issued?

24             MS. HABA:  It was the one time of the filing of the

25  complaint.  There have been no subsequent press releases

1    issued.

2            THE COURT:  But it is posted on Mr. Gutzler's website,

3    is that correct?

4            MS. HABA:  Yes, sir.

5            THE COURT:  In that regard, Mr. Baram, law firms are

6    entitled to issue press releases.  Obviously, those press

7    releases have to be fair and, generally speaking, as long as

8    they fairly communicate in the press release itself the

9    substance of what is in the complaint, that is allowed.

10            If you have some reason to believe that the press

11    release is not a fair depiction of what is contained in the

12    complaint, then you are free to make a motion for whatever you

13    believe is appropriate under the circumstances.  But the fact

14    of a press release by itself is not necessarily sanctionable

15    conduct.

16            MR. BARAM:  May I respond, your Honor?

17            THE COURT:  Yes, you may.

18            MR. BARAM:  The press release was launched on their

19    website before I was served for this lawsuit.  We all know I'm

20    not a lawyer.  But something doesn't sound right about that to

21    me.  I would imagine that they could only put it up once I've

22    been served and I got that piece of paper.

23            They put it up before and it was malicious, and they

24    were trying to defame me.  That's a fact.  If you look at the

25    date that they put it up, it was before I was served.  That was

1   a very clever response because that discrepancy in the date of

2   the alleged rape is such a beautiful example -- I can call them

3   liars now, your Honor, or no?

4          THE COURT:  Why don't you not.

5          MR. BARAM:  I am not going to call them liars.  That

6   was a beautiful answer, your Honor.  But I am going up against

7   three law firms.  But I'm smart enough to say, wow, you know

8   what we are going to tell the judge, let's just say we forgot

9   to put the 1 on there.

10         That is such a beautiful example of this chaotic,

11  disorganized, frivolous lawsuit.  These guys don't even know me

12  personally.  It would be one thing if they knew me and disliked

13  me.  They labeled me the worst thing a human being can name

14  another, worse than a murderer, your Honor, worse than a

15  murderer.

16         I'm a champion of women.  I am Jewish.  In my faith I

17  would take a bullet for my mom.  This goes against all my

18  beliefs.  It is just preposterous.  It is preposterous.

19         I apologize for the emotion, and I apologize for the

20  e-mails that I sent.  I was really holding back, by the way, in

21  those e-mails because I really wanted to say other things.

22         Put yourself in my position just for one moment.  I

23  did not do this.  This is a complete lie.  Jane Doe wants to

24  back out, for whatever reason.  They want to use me as the

25  excuse now.  I understand my e-mails were inappropriate,

1    borderline inappropriate.  I wasn't telling them to fuck off,

2    pardon my language.  I wasn't telling them what I really wanted

3    to say, your Honor.  I was holding back, but I didn't hold back

4    enough, and I apologize.

5              Just hold on one second, please.

6              THE COURT:  I understand.  Obviously, this suit

7    concerns a very sensitive topic.  I know one would not want to

8    willingly be in your position.

9              Here is the thing.  The question for me is -- first of

10   all, I will direct both sides, to the extent that they

11   communicate with each other, communicate with each other

12   respectfully, professionally, and that will be a warning that I

13   now give both sides.  Please, if you are going to communicate,

14   do it professionally and do it respectfully.

15             Secondly, where even are we in terms of discovery, Ms.

16   Haba?

17             MS. HABA:  The plaintiff -- I think, right now we have

18   had -- Mr. Baram's counterclaim has been fully briefed.  I

19   think we are waiting on the Court to rule on that.  I think

20   after that we are going to be ready to state that it's at issue

21   and set it for trial.

22             THE COURT:  I don't see that we have a pending motion.

23             MS. HABA:  Mr. Baram had written a letter motion to

24   the Court in which he had described that he felt he was being

25   defamed.  The plaintiff's team took that as a counterclaim, in

```
1    an abundance of caution, and wrote a response talking about how

2    this was -- if this is a defamation claim, that we gave our

3    legal response to that.  And then Mr. Baram did respond to our

4    filing as well.  So that's what I mean when I say it has been

5    fully briefed.  We took his defamation claim as a counterclaim,

6    and I know he has brought that up several times and

7    acknowledged it as such in his reply.

8                THE COURT:  What I see, at document 27, I see

9    plaintiff's memorandum in opposition to defendant Baram's

10   partial motion to dismiss.  Is that what you are referring to?

11               MS. HABA:  I'm sorry.  I didn't have the docket open.

12   Give me one moment.  I'll pull it right up.

13               Mr. Gutzler, if you know the docket entry.

14               MR. GUTZLER:  I'm sorry.  I don't have it handy.

15               THE COURT:  Your document 27 refers to a document 22,

16   which is a letter from Mr. Baram.

17               MS. HABA:  No.  It was more recently, your Honor.  It

18   was within the last month or two.

19               I think I found it.  Give me one second.

20               Our reply to his motion is docket entry 58, your

21   Honor.  I believe his would have been 57.

22               THE COURT:  You submitted a letter through a response,

23   correct?

24               MS. HABA:  Correct, your Honor.

25               THE COURT:  September 15.  ECF 56 is his letter.
```

1        MS. HABA:  Yes.

2        THE COURT:  Part of the problem is, they don't show up

3   as motions because they are submitted as letters.

4        We will address this.

5        In the meantime, discovery hasn't started, correct?

6   There is no civil discovery schedule that's been entered?

7        MS. HABA:  From the plaintiff's perspective, we are

8   concluded with any discovery efforts that we needed to do.

9        THE COURT:  I'm sorry.  You have completed discovery?

10       MS. HABA:  We are at this point choosing to move

11  forward to trial without engaging in any specific discovery.

12       THE COURT:  Mr. Baram, have you taken any discovery?

13       MR. BARAM:  I don't agree with that at all.  I

14  definitely want to have discovery.  That doesn't sound right at

15  all.

16       THE COURT:  You would be entitled to discovery.

17       MR. BARAM:  100 percent.  I think that's another

18  tactic on their side, but that won't work with me.  No siree

19  Bob.

20       THE COURT:  We will go ahead and address these

21  motions.  And assuming that this case goes forward, then we

22  will have to engage in discovery.  Mr. Baram will be entitled

23  to take discovery.

24       Ms. Haba, did you want to say something?

25       MS. HABA:  I just was going to say, Judge, if we are

1    going to engage in discovery and that's his desire, of course

2    he is entitled to that, and I would never imply otherwise.  I

3    would say, though, in that case we are going to need to revisit

4    the issue, the protective order, and the way that Mr. Baram

5    would engage in discovery as it pertains to Jane Doe.

6            My concern is if that he takes her deposition, it's

7    going to become incredibly adversarial.  If that were to

8    happen, I would either request that it be done in the presence

9    of the magistrate judge or, in the alternative, that we engage

10   in written discovery where she can answer interrogatories, or

11   something to that effect.  If the Court rules that he can take

12   her deposition, despite all of the threats and promises that he

13   has made about the way he is going to treat her, that we have

14   something in place to make sure he doesn't violate the court

15   order since he directly violated the court order when

16   Magistrate Freeman told him not to continue with the financial

17   threats.

18           THE COURT:  Although there is a colorful record

19   already in this case, I am not going to assume that if this

20   case were to go forward and the plaintiff were to be deposed

21   that Mr. Baram would engage in untoward activities.  But,

22   obviously, if he does, then I think he has to understand that

23   there will be consequences.  But, again, I am not going to sit

24   here and assume that that's what will happen.

25           MR. BARAM:  Your Honor, may I respond, please?

1          THE COURT:  Yes, Mr. Baram.

2          MR. BARAM:  If you go through every single e-mail that

3    I sent, I never said anything -- any negative way that I would

4    treat her.  I did call her -- from my research -- I found out,

5    through my research, that she was an escort and a stripper.  I

6    already know she is a liar.  But I never said anything after

7    that.

8          My adversaries keep on saying one lie that can be so

9    easily be proven if you have the time to look through the

10   e-mails.  I never said I want to get her identification so I

11   could put her out there.  Why I would say that?  That's the

12   stupidest thing I could say.  That breaks the protective order.

13   I'm not dumb like that.  But they are hoping that you won't go

14   through it.

15         I make a statement right now.  I said the three things

16   about her, but I never said I would treat her bad.  I Googled

17   online.  I'm allowed to depose her for seven hours.  And I am

18   going to be a gentleman.  I am not going to yell at her.

19   That's not productive.  But I have a right to depose her, and I

20   have a right to cross-examine her, just like they have a right

21   to do it to me.  If she is uncomfortable, too bad.

22         I'm going to be very nervous, too, Lisa Haba.  I am

23   going to be really scared, too.  I have no lawyer when you

24   guys -- what about Jon?  What about me?  No one cares about me.

25   I am going to be scared and nervous, too, and I'm not lying.  I

1   am going in with no one.  I am up against three law firms, your

2   Honor, so I can sing the same song as them.

3        We are both entitled to depositions.  We are both

4   entitled to trial.  We are both entitled to cross-examine.  I

5   will be a gentleman.  I know I sound kind of loud now.  I can

6   be calm.  I can refrain.  And I can respect your order, your

7   Honor.  And Lisa is not telling the truth about following the

8   other order either.

9        MS. HABA:  Your Honor, may I respond very briefly?

10        Mr. Baram just stated that he didn't promise to do

11   anything.  I will just refer to the exhibit I provided to the

12   Court.  His e-mail to the group, dated September 29, it would

13   be page 9 of Exhibit 1.  In the middle of it I highlighted a

14   portion of it.  It says:  I will also only settle if I get Jane

15   Liar Doe's information and the entire file so we can sue her

16   also and do exactly what she did to me.  I am going to do

17   exactly what you did to me to you, also, with such pleasure.

18        If you go down to page 11, which is dated October 1 of

19   2021, it's the e-mail from Mr. Baram to Greg Gutzler and Justin

20   Howell.  I highlighted the portion that says:  I can't wait to

21   depose Jane Doe and have her lie to my face.  I will destroy

22   her credibility and uncover the crimes in her past escort

23   profession.  Jane Doe is a woman -- and then it goes on.

24        There is also a part here where he talks about wanting

25   to destroy not only the lawyers, but also does Jane Doe know

1    that she can go to jail for lying?  I can't wait to depose Jane

2    Doe.  I can't wait to look her in the eyes and have her lie to

3    my face, which is also very difficult.  I hope you paid for

4    acting school because I am going to tear up her performance.  I

5    am also going to destroy you and all of you financially, and

6    I'm thrilled you're spending all your time and money on this.

7    It goes on.

8             I think it's somewhat inaccurate for him to say that

9    he hasn't made statements about the way he intends to treat

10   Jane Doe.

11             MR. BARAM:  By the way, that's after the lawsuit.

12   That's the countersuit.  When I'm in the courtroom, I'm

13   entitled to disparage her because that's what a lawyer does.

14   When I'm in the courtroom, I am entitled to prove that she is

15   an escort and a stripper from what I've uncovered.  I'm allowed

16   to do that, your Honor.  I know that part.  I am allowed to do

17   that in the courtroom.  That's what I meant when I said that.

18   I am not doing it now.  I don't know who she is.  Once I find

19   out who she is in the courtroom, they are going to do it to me.

20   I am allowed to do it to them.

21             THE COURT:  I want you to stop, Mr. Baram.

22             I think Mr. Baram understands that these types of

23   communications cannot continue.

24             MR. BARAM:  Yes.

25             THE COURT:  Ms. Haba has represented that she will

have the street address of the LLC redacted from the complaint.

MR. BARAM:  Thank you.

THE COURT:  That does not require an amended complaint.  Procedurally that can be done.

I will go ahead and rule on the pending motion or the letter that plaintiff has deemed to be a motion, at document 56.  We will take care of that.  Once that's decided, assuming this case moves forward, then I will require the parties to enter into a discovery order on consent.

Again, Mr. Baram, I know that you feel very strongly about this case, I know that you are very emotional about it, and that's completely understandable.  But the communications have to be respectful.  OK?

MR. BARAM:  Yes, your Honor.

Could I say one thing briefly?  Because I know you're busy.

THE COURT:  Sure.

MR. BARAM:  I am going to keep it brief.  Just three quick issues.

I put in a motion to stricken a picture of me that they are misrepresenting.  What I did was -- it's a 15-page motion.  I put a magazine interview with me about my company. When you get a moment, if you could read it, because it conflicts with everything they are saying about me.

It talks about how I'm a father figure, how I was the

1   first one to represent Spanish females in 1999.  When no one

2   would sign them, I was signing them in the Bronx.  If you get a

3   chance, read it because that's the real perception of Jonathan

4   Baram.  I don't know if my adversaries read it.  They probably

5   didn't.  But they should read it too because they really picked

6   the wrong guy.  That's the bottom line.

7          Another thing I wanted to ask you was, in March I put

8   in a request to have the federal sex charge dismissed because

9   it expired, and I put in a motion saying that nothing I did in

10  the last 15 years warranted equitable tolling.  Forgive me that

11  I don't know the process.  But when would I get a response on

12  that?  Because that was a long time ago and it seems like an

13  important issue.

14         THE COURT:  Again, it doesn't show up as a motion on

15  our system.

16         MR. BARAM:  Should I resubmit it?

17         THE COURT:  You don't have to.  That's the document

18  that I mentioned earlier is -- hold on.

19         MR. BARAM:  I think it was March 26 that I sent it,

20  your Honor, March 26 or 29.  It was a request to dismiss the

21  federal sex charge because it expired.  Thank you.

22         MS. HABA:  Your Honor, to streamline this and make it

23  a little easier, docket entry 56 that we responded to, and we

24  have asked the Court to review, that issue is addressed in

25  there as well for the Court's review.

1          THE COURT:  We will get these all cleaned up.

2          In the meantime, I don't know that there is any reason

3    for you folks to talk until you get my decision.  Maybe it's

4    better that you don't.

5          MR. BARAM:  Loud and clear, your Honor.  Thank you so

6    much for your time.

7          THE COURT:  Anything else, Ms. Haba?

8          MS. HABA:  Nothing, your Honor.  Thank you.

9          THE COURT:  Everyone, please stay well.

10          (Adjourned)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25