UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JANE DOE

      Plaintiff,

–*against* –

JONATHAN BARAM *and* WARREN & BARAM MANAGEMENT LLC,

      Defendants.

**OPINION & ORDER**

20-cv-9522 (ER)

RAMOS, D.J.:

  Jane Doe brought claims against Jonathan Baram ("Baram") and Warren & Baram Management LLC ("WBM"), a talent management agency owned by Baram, pursuant to the United States federal sex trafficking statute, 18 U.S.C. §§ 1591, *et seq.*, and other state laws on November 12, 2020.  Doc. 1.  Before the Court is WBM's motion to set aside the default judgment against it, Doc. 154, which was entered on May 19, 2021, Doc. 44.  For the reasons set forth below, that motion is DENIED.

I.  BACKGROUND

  A.  Statement of Facts

  The following facts are taken from the complaint unless otherwise noted.  Jane Doe[1] alleges that Baram and WBM (together, "Defendants") participated in trafficking Jane Doe, while she was a minor, for the purpose of her being sexually assaulted by Peter Nygard ("Nygard") in 2007.  Doc. 1.  Nygard was an established clothing designer who has since become the defendant in multiple suits, including a criminal indictment, related to international sex trafficking, rape, and sexual assault.  *Id.* ¶¶ 1, 6.  WBM is an LLC registered in New York State whose business is representing models and actors for work in film, television, and print media.  *Id.* ¶ 57.  Baram is president of WBM.  *Id.* ¶ 56.

---

[1] Jane Doe filed a motion to proceed anonymously on November 12, 2020.  Doc. 7.  The Court granted that motion on August 5, 2021 because of the highly sensitive and personal nature of the allegations and because Defendants were unlikely to suffer prejudice from the anonymity.  Doc. 50.

WBM had promised to represent Jane Doe for modeling and acting work, and, based on this promise, Jane Doe traveled from Canada (where she lived) to New York in 2007. *Id.* ¶¶ 13–14. At all relevant times, Jane Doe was seventeen years old. *Id.* ¶ 13.

Upon her arrival in New York City, Baram brought Jane Doe to his private apartment for a business meeting. *Id.* ¶ 15. During this meeting, Baram told Jane Doe that he was friends with Nygard, and that he could set up a meeting between Jane Doe and Nygard regarding future modeling work. *Id.* ¶ 16. Baram told Jane Doe that, in order to set up the meeting, he needed to take nude photos of her to send to Nygard for his approval. *Id.* ¶ 17. Baram took nude photographs of Jane Doe and sent them to Nygard. *Id.* ¶¶ 18–19. After getting approval from Nygard, Baram took Jane Doe to Nygard's apartment, knowing that Nygard intended to rape her. *Id.* ¶¶ 19–20. At Nygard's apartment, Baram and employees of the Nygard companies offered Jane Doe alcoholic beverages spiked with drugs. *Id.* ¶¶ 21, 24. Nygard then took Jane Doe into a bedroom, ostensibly for a meeting to discuss modeling. *Id.* ¶ 22. Jane Doe became unconscious and was subsequently raped by Nygard. *Id.* ¶¶ 26–29. Baram then took Jane Doe back to his apartment where he also assaulted her. *Id.* ¶ 30, 32. Jane Doe left the next morning. *Id.* ¶ 33.

**B. Procedural History**

*1. Jane Doe Sues Baram and WBM*

On November 12, 2020, Jane Doe filed the instant action for damages against Baram and WBM for knowingly participating in Nygard's sex trafficking enterprise, which resulted in her rape and sexual assault. *Id.* Service on WBM was executed and accepted by Baram on November 18, 2020. Doc. 11. Service was executed on Baram himself on the same date. Doc. 10. Baram was granted an extension to respond to the complaint on December 10, 2020. Doc. 16. WBM did not request an extension.

Baram requested a premotion conference in a letter dated January 8, 2021. Doc. 19-1. The conference was to address Baram's request to dismiss the case due to

expiration of the statute of limitations and his request for a more definite statement, specifically that he be told the name of his accuser and the date and exact locations of the events in the complaint. *Id.* The premotion conference was held on February 5, 2021. Doc. 158 (Feb. 5, 2021 Conference Tr.). Baram appeared *pro se*, but no attorney appeared to represent WBM. *Id.* The Court advised Baram that he could represent himself *pro se*, but WBM needed to be represented by an attorney or be subject to default. *Id.* at 11: 3–13. Baram acknowledged the warning and said:

> I do not operate under Warren & Baram LLC, I operate under a sole proprietorship. So I have no connection with that. That LLC owns no assets, does not exist—well, technically it exists, but it doesn't have a bank account. . . . So you could proceed with that, it doesn't bother me at all. It has nothing to do with me, and I'm in the process of trying to find out who set that up because I did not give the permission to do that.

*Id.* at 11: 16–25. At the premotion conference, Baram was given leave to file his motions for dismissal and for a more definite statement. *Id.* at 15:22–16:3.

On February 26, 2021, Baram sent a letter to the Court asking that the charges against him be dismissed, though he made no mention of the charges against WBM. Doc. 22.

    *2. WBM Defaults*

By Order dated March 11, 2021, the Court directed WBM to retain counsel by April 12, 2021 or risk default. Doc. 23. No attorney entered any notice of appearance on behalf of WBM by that day.

The Clerk entered a certificate of default against WBM on April 20, 2021. Doc. 35. On May 5, 2021, the Court then issued an order to show cause as to why a default judgment should not be entered against WBM. Doc. 41. The order called for WBM to appear to contest the order on May 18, 2021. *Id.* The conference was later rescheduled for May 19, 2021. May 13, 2021 Docket Annotation.

Baram appeared *pro se* at the May 19, 2021 hearing, but again no counsel appeared on behalf of WBM. Doc. 156 (May 19, 2021 Conference Tr.) at 2:16–20. The Court again advised Baram that a default judgment would be entered against WBM, and Baram responded, "Yes, that is correct your Honor." *Id.* at 2:20. During the same conference, Baram continued to distance himself from WBM:

> The only thing I stated was I have nothing do with the LLC. That has to be set up with an attorney. I cannot set it up. This was set up 20 years ago without my consent. . . . So the only thing I'm denying is Warren & Baram LLC, I operate under a sole proprietorship, which is not an LLC. So I had to let Warren & Baram go [into default].

*Id.* at 6: 6–15. At no point did WBM, or Baram on WBM's behalf, request additional time to seek counsel. *Id.*

The Court entered default judgment against WBM on May 19, 2021. Doc. 44. In the wake of WBM's default, an order of reference was issued to a magistrate judge on October 22, 2021 to assess the damages for which WBM would be liable. Doc. 77.

On October 22, 2021, Jane Doe voluntarily dismissed her case without prejudice against Baram, continuing her case solely against WBM. Doc. 78. In a letter dated November 16, 2021, Baram requested that the magistrate set aside the default judgment against WBM, citing a lack of funds and asserting that WBM was created without his consent, that it was an "empty shell," and that it had no assets or bank account. Doc. 88. Baram later wrote a letter to the Court, dated April 8, 2022, in which he characterized WBM's default as having been "volunteered" and asking if the Court could "rename the default 'voluntarily?'" Doc. 120 at 2. However, in a subsequent letter to the Court, Baram wrote that the default judgment was "singularly, executed [sic] because I did not have the money to pay for a lawyer." Doc. 133 at 1. He continued, "I never operated under Warren and Baram management limited LLC," and, "Warren and Baram management LLC has no office, no bank account and no office records because it does not exist. It is an empty shell that never owned anything ever!" *Id.* at 4–5.

4

### 3. The Instant Motion

On January 10, 2023, a notice of appearance was filed by counsel to represent WBM. Doc. 147. On February 16, 2023, WBM filed the instant motion to set aside the default judgment. Doc. 154. Baram now alleges, in an affidavit in support of the instant motion, that, prior to the default, he had attempted to obtain counsel for WBM but the five attorneys he contacted would not accept the case due to his lack of funds and the nature of the allegations. Doc. 155-1 ¶¶16–23; *see also* Doc. 155 (Def. Mem. of L. in Supp. of Mot.) at 12–13. This included five unnamed attorneys to whom Baram "reached out" on unspecified dates, Doc. 155-1 ¶¶ 16–18, and a call to the offices of the attorney Gloria Allred, who also declined to represent WBM, *id.* ¶¶ 22–23. In the same affidavit, Baram conceded that he owns WBM and said, "I formed WBM but I did not do business through WBM," and, "[i]n fact, no model I worked with knew of WBM." *Id.* ¶¶ 2–4.

## II. LEGAL STANDARD

Fed. R. Civ. P. 55(c) provides that a court may set aside an entry of default for good cause, and, if a final default judgment has been entered, may likewise set it aside in accordance with Rule 60(b). Rule 60(b) provides that a final judgment, including a default judgment, may be set aside on the grounds that the judgment occurred as a result of "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or due to "fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3). While there is a preference in the Second Circuit for resolving disputes on the merits, especially when substantial rights are implicated or substantial sums of money are demanded, the orderly and efficient administration of justice may nevertheless require maintaining the default judgment. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95–97 (2d Cir. 1993).

In determining whether there is "good cause" to vacate an entry of default under Fed. R. Civ. P. Rule 55(c), or to set aside a default judgment pursuant to Rule 60(b), courts in this Circuit consider three criteria: (1) whether the default was willful; (2)

5

whether the defaulting party demonstrates the existence of a meritorious defense; and (3) whether, and to what extent, vacating the default would prejudice the adversary. *Id.* at 96–98. These factors are weighed in relation to each other, and no single factor is dispositive. *Murray Eng'g, P.C. v. Windermere Props. LLC,* No. 12-cv-52 (JPO), 2013 WL 1809637, at *4 (S.D.N.Y. Apr. 30, 2013). The disposition of a motion to set aside an entry of default under Rule 55(c) or a final default judgment under Rule 60 (b) is left to the Court's discretion "because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties." *Enron*, 10 F.3d at 95.

These factors are applied "more rigorously in the case of a default judgment," rather than in a challenge to the entry of a default, "because the concepts of finality and litigation repose are more deeply implicated in the [default judgment] action." *Id.* at 96; *accord 1199SEIU United Healthcare Workers E. v. Alaris Health at Hamilton Park*, No. 22-cv-531 (LJL), 2022 WL 17251772, at *2 (S.D.N.Y. Nov. 28, 2022).

**III.    DISCUSSION**

WBM argues that good cause exists to set aside the entry of default under Rule 55(c) according to the three-prong test articulated in *Enron*, 10 F.3d at 96. *See generally* Doc. 155. Specifically, WBM argues that the default was not willful, that it has meritorious defenses to the allegations, and that setting aside the default would not prejudice Jane Doe. *Id.* at 11–16. Further, WBM asserts that Baram's *pro se* appearance and the amount of money at stake create equitable grounds for setting aside the entry of default. *Id.* at 16–17. Lastly, WBM argues that the default judgment was improvidently granted since damages had yet to be assessed and therefore the default judgment should be set aside under Rule 60(b). *Id.* at 17–18.

Jane Doe opposes, arguing that WBM's default was willful because Baram, who accepted service for WBM as its sole owner, repeatedly tried to distance himself from the company, evinced no effort or intention of obtaining counsel for WBM, and urged the

6

Court to declare that he "volunteered" its default. Doc. 160 (Pl. Opp'n) at 18–20. Furthermore, Jane Doe argues that WBM offers no meritorious defenses outside of conclusory denials and intimations of evidence which has yet to be presented. *Id.* at 21–23. And Jane Doe argues she would be severely prejudiced if the default were set aside due to multiple past instances of Baram threatening and maligning her and her counsel. *Id.* at 23–24.

### A. Setting Aside the Default Judgment is Not Warranted Under the *Enron* Test

Federal Rule of Civil Procedure 55(c) permits an entry of default to be set aside for good cause. This Circuit evaluates good cause using the three *Enron* factors. *Enron*, 10 F.3d at 96. It is the burden of the moving party to demonstrate that good cause exists for setting aside the default. *State Univ. N.Y. v. Triple O, LLC,* No. 21-2116-cv, 2022 WL 14177198, at *2 (2d Cir. Oct. 25, 2022) (citation omitted).

#### 1. *Willfulness of the Default*

Under the first *Enron* factor, the movant must show that the conduct leading to the default was not willful. *Id.* In the context of a corporate defendant, willfulness will be found where it is told to obtain counsel to represent it[2] and enter an appearance but does not do so. *Trustees of the Local 7 Tile Indus. Welfare Fund v. Am Tile Specialty Constr.*, No. 19-cv-1809 (RPK) (SJB), 2020 WL 7034025, at *4 (E.D.N.Y. Sep. 23, 2020).

WBM argues that its lack of representation was not willful because its lack of counsel could be satisfactorily explained. Doc. 155 at 12. Specifically, WBM alleges none of the attorneys it contacted would accept the case because WBM lacked funds and because of the nature of the allegations brought against the company. *Id.* at 12–13.

Jane Doe argues this Circuit's interpretation of willfulness refers to conduct that is deliberate, instead of negligent. Doc. 160 at 17. This includes conduct where a defendant

---

[2] A corporation cannot appear *pro se* before a federal court. *Carlone v. Lion & the Bull Films, Inc.*, 861 F Supp. 2d 312, 318 (S.D.N.Y. 2012) (citing *Rowland v. California Men's Colony*, 506 U.S. 194, 201–02 (1993)).

"apparently made a strategic decision to default." *Id.* (quoting *Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 60–61 (2d Cir. 1996)).

The Court finds that WBM's default was willful. In the first instance, at no point prior to the entry of default judgment did Baram or anyone else tell the Court that efforts were being made to retain counsel for WBM. Baram, the sole owner of WBM, as much as conceded that his conduct was deliberate in a letter to the Court where he said he had "volunteered" the default judgment. Doc. 120 at 2. Prior to that, during the February 5, 2021 premotion conference, Baram said a potential default against WBM would not "bother [him] at all. It has nothing to do with [him]." Doc. 158 at 11: 22–23. Later, Baram continued to distance himself from WBM by saying, "I have nothing to do with the LLC. . . . [T]he only thing I'm denying is Warren & Baram LLC, I operate under a sole proprietorship, which is not an LLC. So I had to let Warren & Baram go [into default]." Doc. 156 at 6: 6–15.

Thus, WBM, through its sole owner, was given notice of the risk of default and ample time to obtain counsel, Doc. 23, but did not do so until more than a year and a half after default was entered, Doc. 147. Even crediting WBM's allegations that Baram was unable to retain counsel for WBM because of his lack of funds and the nature of the case, neither WBM nor Baram ever brought such concerns to the Court until the instant motion, nor ever requested additional time to obtain counsel or otherwise attempted to resist default. Had Baram or WBM requested additional time to obtain counsel to avoid default, the Court would likely have granted such time and declined to enter default. Accordingly, WBM's default was willful.

2. *Meritorious Defenses*

To demonstrate the existence of a meritorious defense, a defendant must present facts that would constitute a complete defense if proven at trial. *Enron*, 10 F.3d at 98; *see also New York v. Green,* 420 F.3d 99, 109 (2d Cir. 2005) (citing *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998)). "The defaulting defendant 'need only meet a low threshold to

8

satisfy this factor,'" *Gench v HostGator.com LLC,* No. 14-cv-3592 (RA) (GWG), 2015 WL 3757120, at *5 (S.D.N.Y. June 17, 2015) (quoting *MD Produce Corp. v. 231 Food Corp.,* 304 F.R.D. 107, 110 (E.D.N.Y. 2014)), and need not prove the defense conclusively, *McNulty,* 137 F.3d at 740.  However, the existence of the defense must be established with "more than conclusory denials," *Pecarsky v. Galaxiworld.com, Ltd.,* 249 F.3d 167, 173 (2d Cir. 2001), and a defendant must still "articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations," *FedEx TechConnect, Inc. v. OTI, Inc.,* No. 12-cv-1674 (RJS), 2013 WL 5405699, at *8 (S.D.N.Y. Sept. 23, 2013) (citation omitted).  It is not enough to promise facts to be revealed should the case continue.  *See Vazquez v Hand Hospitality LLC*, 20-cv-5328 (ER), 2022 WL 17718337, at *6 (S.D.N.Y Dec. 15, 2022).

WBM claims that no allegations were made against it in the initial complaint.  Doc. 155 at 13.  It further denies the factual allegations in the complaint.  *Id.* at 14.  Its only support for these denials is the promise of evidence to be presented later:  "WBM has evidence of its noninvolvement with Jane Doe and so does Mr. Baram. . . . WBM is ready for discovery, and it is ready to provide evidence of his noninvolvement in Jane Doe's alleged trafficking."  *Id.* at 16.

Jane Doe, however, argues that the complaint contains ample allegations concerning WBM.  Doc. 160 at 21.[3]  Moreover, WBM has offered no evidence to substantiate its denials of Jane Doe's factual allegations.  *Id.* at 22.

The Court finds that WBM has not shown the existence of a meritorious defense.  As the complaint refers to Baram and WBM collectively as "Defendants," each subsequent allegation in the complaint attributed to "Defendants" refers to WBM as well

---

[3] These allegations include that WBM lured Jane Doe, who was a minor at the time, to Nygard's residence knowing that Nygard was planning to rape her and that WBM enticed Jane Doe to travel to New York City under the false pretense that WBM would represent her as a model and/or actress when in reality she was lured for the sole purpose of being trafficked to Nygard.  Doc. 160 at 21 (citing Doc. 1).

9

as Baram. *See* Doc. 1. Therefore, WBM's argument that the complaint contains no allegations against it has no merit.

WBM's denial of the factual allegations in the complaint is likewise unsuccessful. WBM denies the facts regarding Baram, and by extension WBM, ever having worked with an aspiring Canadian model, met Jane Doe (despite her anonymity), or been friends with Nygard. Doc. 155 at 14. But WBM offers no evidence to support its denials. *Id.* There is only a promise of evidence-to-come and is accordingly insufficient to demonstrate a meritorious defense. *See Vazquez,* 2022 WL 17718337 at *6.

Because the willfulness and meritorious defense factors strongly weigh against vacating the default, there is no need to evaluate the arguments for prejudice against Jane Doe in determining whether there is good cause to set the default aside. In this Circuit, a finding of willfulness in default and a lack of meritorious defense obviates consideration of the prejudice factor. *State Univ. N.Y.*, 2022 WL 14177198, at *4. However, the Court will still examine the third factor on the merits of the arguments made by the parties.

3. *Prejudice to Plaintiff*

WBM argues that Jane Doe will not be prejudiced because it alleges she has "so far refused to participate in discovery," and she "voluntarily dismissed her claims against Mr. Baram as discovery approached for fear she would be found out." Doc. 155 at 15. WBM further questions Jane Doe's motives for bringing the suit. *Id.*

Jane Doe argues she would suffer prejudice through the threats and harassment that would come from Baram learning her identity if the default were vacated. Doc. 160 at 24. Jane Doe cites multiple instances of such behavior to which she and her counsel have previously been subject by Baram, arguing that Baram's only reason for suddenly defending a company allegedly without either assets or a bank account is to learn Jane Doe's identity so that he can, "destroy" her. Doc. 160 at 23–24.

In evaluating prejudice, Courts in this Circuit consider whether vacating the default would, for instance, "thwart[] plaintiff's recovery or remedy . . . , result[] in the

10

loss of evidence, creat[e] increased difficulties of discovery, or provid[e] greater opportunity for fraud and collusion." *Swarna v. Al-Awadi,* 622 F.3d 123, 142 (2d Cir. 2010) (citation and internal quotation marks omitted). At the same time, the prejudice the non-defaulting party would suffer is considered in relation to the willfulness of the default and the merits of the asserted defenses. *Vazquez,* 2022 WL 17718337, at *7.

WBM arguments merely criticizes Jane Doe's motivations without squarely addressing whether vacating the default would cause her prejudice. *See* Doc. 155 at 15. Accordingly, WBM has failed to satisfy its burden to establish Jane Doe would not be prejudiced. *See State Univ. N.Y.*, 2022 WL 14177198, at *2.

### B. Equitable Arguments Do Not Require a Different Result

The Second Circuit held in *Enron* that "equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron,* 10 F.3d at 96 (citation omitted). WBM argues such equitable factors require setting aside the default here. Doc. 155 at 16.

Specifically, WBM compares itself to the *Enron* defendant, who was appearing *pro se*, and had a default judgment of $257.3 million against him. Doc. 155 at 16–17. WBM argues that Baram was acting *pro se* and that granting Jane Doe the $6 million she is asking for without a trial would be an inequitable result. *Id.* at 17.

Jane Doe argues that WBM was not *pro se* because a corporation cannot appear *pro se* in Federal Court. Doc. 160 at 25. Jane Doe also argues that a $6 million judgment against an LLC like WBM is not inequitable considering that Baram stated that the company had no assets to lose. *Id.*

The Court finds that there are no equitable reasons to set aside the default. The comparisons to Enron are inapt because, corporations cannot appear *pro se*, nor could Baram appear *pro se* on WBM's behalf, as this Court repeatedly instructed Baram. *See, e.g.*, Doc. 23; Doc. 41; Doc. 158 at 11:3–25. WBM provides no support for its assertion

11

that $6 million is a harsh or unfair result in this case beyond comparing it to a judgment that was 42 times higher and was against a non-corporate individual.

### C. Rule 60(b) is Not Applicable

Rule 60(b) provides that a final judgment may be set aside because, *inter alia*, "(1) mistake, inadvertence, surprise, or excusable neglect; . . . (4) the judgment is void; . . . (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). WBM argues that the judgment was "improvidently granted" because (1) liability is inappropriate against WBM because the complaint fails toa make allegations against it, and (2) damages have not yet been calculated. Doc. 155 at 17–18. Jane Doe argues Rule 60(b) is not operative in this case because a final judgment has not yet been entered. Doc. 160 at 25 n.1.

The Court finds that a 60(b) argument is premature here. Rule 60(b) applies only to relief from final judgments. Fed. R. Civ. P. 60(b). A final judgment exists only "when there is nothing left for the court to adjudicate." *Murray Eng'g, P.C.*, 2013 WL 1809637, at *3 (quoting *Globe Indem. Co. v. J.T. Falk & Co., Inc.*, No. 91-cv-0271 (PKL), 1992 WL 116630, at *3 (S.D.N.Y. May 15, 1992)). Where an inquest for damages remains outstanding, no final judgment accordingly has yet been entered. *Id.* Here, although, a default judgment has been entered, Doc. 44, damages are to be determined in proceedings before a magistrate judge, Doc. 77. Until the completion of the damages proceedings, no final judgment exists. *See Murray Eng'g, P.C.*, 2013 WL 1809637, at *3. Therefore Rule 60(b) is not applicable to this motion, and WBM's argument lacks merit.

**IV.     CONCLUSION**

For the foregoing reasons, the motion to vacate default judgment is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Docs. 152 and 154.

It is SO ORDERED.

Dated:   July 19, 2023
         New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　EDGARDO RAMOS, U.S.D.J.